1998 SD 72

**Lyle STRASSBURG, Plaintiff and Appellant,**

v.

**CITIZENS STATE BANK, Defendant and Appellee.**

**No. 20038.**

Supreme Court of South Dakota.

Argued Dec. 2, 1997.

Decided July 8, 1998.

·Rick Johnson of Johnson, Eklund, Nicholson, Peterson & Fox, Gregory, David R. Gienapp of Arneson, Issenhuth & Gienapp, Madison, for plaintiff and appellant.

Lee Magnuson, William F. Day, Daniel R. Fritz, of Lynn, Jackson, Shultz & Lebrun, Sioux Falls, for defendant and appellee.

KONENKAMP, Justice.

[¶ 1.] In this appeal, we examine whether an attorney's purported misrepresentation of fact to an adversary may toll the statute of limitations. When plaintiff accused Citizens State Bank of converting his money, the Bank's attorney admitted it had "setoff" funds, but only a fraction of the amount plaintiff claimed. Relying on this statement, plaintiff brought no action against the Bank for ten years, until after he received word it may have taken considerably more money. The circuit court granted summary judgment for the Bank, concluding plaintiff's claim was barred by the six-year statute of limitations.

We reverse because whether plaintiff knew or should have known of his cause of action at the time the Bank's attorney admitted only a fractional setoff is a question of fact.

### Facts

[¶ 2.] In March 1983, Lyle Strassburg delivered for sale 80,312 bushels of corn to Steffensen Grain Company, Inc. Thereafter, Steffensen owed Strassburg $151,331.80. Steffensen resold the grain to Continental Grain Company and it wired payment directly to Steffensen's account at Citizens State Bank of Arlington. The Bank held a security interest in Steffensen's existing and after-acquired grain inventory. To satisfy unpaid loans, the Bank setoff funds from Steffensen's account, ostensibly by right of its security agreement. Afterwards, Steffensen was unable to pay all its debts; so it chose to satisfy its smaller creditors thus leaving Strassburg wholly unpaid.

[¶ 3.] On November 15, 1983, Strassburg's attorney wrote to the Bank:

Your bank set off money that was held by Steffensen Grain in a constructive trust for the benefit of Mr. Strassburg. Your action constituted a conversion of funds due Mr. Strassburg in the amount of $151,331.80. This letter is to make demand on you for the payment to Mr. Strassburg of the amount of $151,331.80 plus interest....

At first, the Bank denied taking any setoff, but in response to another letter from Strassburg's new attorney dated June 11, 1985, again accusing conversion, the Bank's lawyer wrote, "I can certainly assure you, however, that your recitation of the facts is incomplete and inaccurate. *The only pertinent setoff made is insignificant in compari-*

*son to the amount of your client's claim."* [1] In a follow-up letter dated June 28, 1985, the Bank's attorney again attested to the accuracy of the Bank's information:

I have received some additional information with regard to the claim made on behalf of the Strassburgs against Citizens State Bank of Arlington. *I can now confirm for you that there was only one setoff, that being in the amount of $24,898.56.* That setoff occurred on March 17, 1983. I have also been informed by the Citizens State Bank of Arlington that no check was ever presented by the Strassburgs. Frankly, based on these two specific pieces of information, I see no basis whatsoever for any claim by the Strassburgs against the Citizens State Bank of Arlington. *After you have informed them that Mr. Steffensen apparently misled them when he indicated the bank had setoff his wire-transferred funds,* and if they confirm to you that they never even presented a check to the Citizens State Bank of Arlington, you may be in a position to advise them that any claim against the Citizens State Bank of Arlington would be fruitless and improper.

(emphasis added.)

Strassburg testified that he and his attorney relied on these representations.[2] Thus, he brought suit only against Steffensen in October 1986, but the company dissolved, and the case was dismissed.

[¶ 4.] In September 1992, Strassburg received a letter from the South Dakota Public Utilities Commission suggesting that, although the PUC had no documentation, he

---

1. Appellate counsel were not representing the parties at that time.

2. The circuit court in its memorandum granting summary judgment concluded that "but for [Strassburg's] attorney's advice based upon that attorney's belief in the Bank's position that the setoff was proper, he would have commenced an action against the bank." But what Strassburg actually said was

    A: I had Bob Hayes from the Davenport firm take the case and look further into it.
    Q: Okay. And what was the result of that?
    A: We withdrew that because he was advised by [the Bank's attorney] that there was, that

came from the Citizens State Bank, that there was no offset money I had coming.
    Q: You did not sue Citizens State Bank at that time, correct.
    A: Possibly not at that time.
    Q: And why was it that you didn't sue Citizens State Bank at that time?
    A: Because of the legal counsel from the Davenport firm.
    Q: I'm sorry, what do you mean by that?
    A: Bob Hayes, who was representing me.
    Q: And as a result of his advice you decided not to sue Citizens State Bank?
    A: That came as a result of what [the Bank's attorney] was told by Citizens State Bank and sent to Hayes.

may have a cause of action against the Bank because it had "setoff the Steffensen Grain's checking account by approximately $485,000 to reduce the amount of Steffensen Grain's outstanding notes which were held by the bank." Strassburg sued the Bank on February 13, 1995. The circuit court granted the Bank's motion for summary judgment, concluding that under SDCL 15–2–13 the six year statute of limitations began to run from June 1985 when the Bank admitted the setoff. Strassburg appeals contending material issues of fact remain on whether the limitations period was tolled by misrepresentation and fraudulent concealment.[3]

### Analysis and Decision

■ [¶ 5.] On appeal from summary judgment, "we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law...." *Walz v. Fireman's Fund Ins. Co.*, 1996 SD 135, ¶ 6, 556 N.W.2d 68, 70 (quoting *Lamp v. First Nat'l Bank of Garretson*, 496 N.W.2d 581, 583 (S.D.1993)). "The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party." *Fritz v. Howard Twp.*, 1997 SD 122, ¶ 8, 570 N.W.2d 240, 241. If any legal reason justifies summary judgment "it must be affirmed" even if the circuit court "relied upon a wrong ground or gave a wrong reason." *Helvering v. Gowran*, 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224(1937) (citations omitted). In response to a summary judgment motion where the defendant asserts the statute of limitations as a bar to the action and presumptively establishes the defense by showing the case was brought beyond the statutory period, the burden then shifts to the plaintiff to establish the existence of material facts in avoidance of the statute of limitations, e.g., fraud or fraudulent concealment. *Kurylas, Inc. v. Bradsky*, 452 N.W.2d 111, 117 (S.D.1990); *Glad v. Gunderson, Farrar, Aldrich & DeMersseman*, 378 N.W.2d 680, 682 (S.D.1985).

[¶ 6.] As we are bound to review summary judgment in a light most favorable to the nonmoving party, Strassburg, we do not decide whether the Bank had the right to setoff money in the Steffensen account and whether it setoff more than it claimed. We note, however, that Strassburg's allegation of a larger setoff does not rest solely on the PUC letter. The record contains an affidavit from a CPA who after examining the Bank's records, concluded there was evidence to support the claim of additional setoffs. Whether any of this will be borne out are questions to be resolved at trial.

[¶ 7.] Because the point at which a period of limitations begins to run must be decided from the facts of each case, statute of limitations questions are normally left for a jury. *Greene v. Morgan, Theeler, Cogley & Petersen*, 1998 SD 16, ¶ 6, 575 N.W.2d 457, 458 (citations omitted). Deciding what constitutes accrual of a cause of action, however, entailing statutory construction, presents an issue of law. *Bosse v. Quam*, 537 N.W.2d 8, 10 (S.D.1995)(citing *Schoenrock v. Tappe*, 419 N.W.2d 197, 201 (S.D.1988)). Questions about when a plaintiff should have discovered fraud are jury issues also, unless a plaintiff *actually knew* of facts putting a reasonable person on "actual or constructive notice to suspect" fraud. *Anderson v. Production Credit Ass'n*, 482 N.W.2d 642, 644 (S.D.1992). *See also Kelly v. Connecticut Mut. Life Ins. Co.*, 628 So.2d 454, 455 (Ala.1993)(quoting *Hickox v. Stover*, 551 So.2d 259, 262 (Ala. 1989), *overruled on other grounds, Foremost Ins. Co. v. Parham*, 693 So.2d 409 (Ala. 1997))(fraud discoverable as matter of law for limitations period purposes when one receives documents putting one on notice that fraud reasonably should be discovered). Here, we must ascertain whether there is any genuine issue of material fact concerning the date the cause of action accrued; if not, and if the applicable limitations period has expired as a matter of law, then the Bank was entitled to summary judgment. *Keegan v. First Bank of Sioux Falls*, 519 N.W.2d 607, 611 (S.D.1994).

---

3. Strassburg also contends that before he sold the grain to Steffensen the Bank assured him it was safe to deal with the company, and that after the setoff the Bank had a duty to truthfully disclose the full extent of its setoffs in response to Strassburg's attorneys' letters. The Bank denies both misleading him and taking a larger setoff.

[¶ 8.] The philosophy subtending civil limitation periods, embraced in "all systems of enlightened jurisprudence," holds it unjust to leave open indefinitely exposure to outdated lawsuits. *Wood v. Carpenter*, 101 U.S. 135, 139, 25 L.Ed. 807 (1879).

[T]he right to be free of stale claims in time comes to prevail over the right to prosecute them. *Order of Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 349 [, 64 S.Ct. 582, 586, 88 L.Ed. 788] (1944). These enactments are statutes of repose; and although affording plaintiffs what the legislature deems a reasonable time to present their claims, they protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise. *United States v. Marion*, 404 US 307, 322 n 14 [, 92 S.Ct. 455, 464, 30 L.Ed.2d 468] (1971); *Burnett v. New York Cent. R. Co.*, 380 US 424, 428 [, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941] (1965); *Chase Securities Corp. v. Donaldson*, 325 US 304, 314 [, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628] (1945); *Missouri, K. & T.R. Co. v. Harriman Bros.*, 227 US 657, 672 [, 33 S.Ct. 397, 401, 57 L.Ed. 690] (1913); *Bell v. Morrison*, [26 U.S. 351,]1 Pet 351, 360[, 7 L.Ed. 174] (1828).

*United States v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979).

■ [¶ 9.] The Bank's setoff of Steffensen's account forms the basis for Strassburg's claim and both parties agree SDCL 15–2–13 provides the applicable statute of limitations:

Except where, in special cases, a different limitation is prescribed by statute, the following civil actions other than for the recovery of real property can be commenced only within six years after the cause of action shall have accrued:

(1) An action upon a[n] ..., obligation, or liability, express or implied....

\* \* \* \* \* \*

(4) An action for ... specific recovery of personal property....

\* \* \* \* \* \*

(6) An action for relief on the ground of fraud....

\* \* \* \* \* \*

The word "accrued" as used in this statute is left undefined and is therefore subject to judicial interpretation. "Accrue" derives from the Latin words "ad" and "creso," to grow to; thus it means to arise, to happen, to come into force or existence. *Berry v. Branner*, 245 Or. 307, 421 P.2d 996, 998 (1966); Black's Law Dictionary, 6th ed (1968).

A limitations period ordinarily does not begin to run until the plaintiff has a "complete and present cause of action." *Rawlings v. Ray*, 312 U.S. 96, 98 [, 61 S.Ct. 473, 474, 85 L.Ed. 605] (1941). A cause of action does not become "complete and present" until the plaintiff can file suit and obtain relief. *See Reiter v. Cooper*, 507 U.S. 258, 267 [, 113 S.Ct. 1213, 1219, 122 L.Ed.2d 604] (1993).

*Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of California, Inc., et al.*, —— U.S. ——, 118 S.Ct. 542, 545, 139 L.Ed.2d 553 (1997) (interpreting "the date on which the cause of action arose" in 29 U.S.C. § 1451(f)(1)).

■ [¶ 10.] Absent some tolling provision, Strassburg's claim accrued under SDCL 15–2–13 when the setoff occurred because, had he known, he could have commenced an action at that time. A statute of limitations ordinarily begins to run when the plaintiff either has actual notice of a cause of action or is charged with notice. "Actual notice consists in express information of a fact." SDCL 17–1–2. "Constructive notice is notice imputed by the law to a person not having actual notice." SDCL 17–1–3. One having actual notice of circumstances sufficient to put a prudent person on inquiry about "a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself." SDCL 17–1–4. Either actual or constructive notice, therefore, will equally suffice to start the statute of limitations' clock running.

[¶ 11.] Strassburg neither questions the time when the setoff occurred nor disputes the date when he received notice of it. He contends the Bank at first concealed any setoff, then misrepresented its true amount preventing him from discovering his cause of action and thus effectively tolling the statute of limitations. Strassburg claims he relied on the Bank's purportedly false representations and that he did not know the true nature of the Bank's conduct until he received a letter from the PUC claiming the Bank had taken a much larger setoff. Limitations periods will not abide indefinitely while those aggrieved discover all their damages. If accrual of the action was tolled by misrepresentation, then the question is, when should Strassburg have known he had a cause of action against the Bank?

### A. Undiscovered Fraud Tolling Accrual

[¶ 12.] Fraud is defined as "a representation ... made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; [and] made with intent to deceive and for the purpose of inducing the other party to act upon it." *Klinker v. Beach*, 1996 SD 56 ¶ 13, 547 N.W.2d 572, 575. For fraud to be actionable, a party must further "rely on it and [be] induced thereby to act to his injury or damage." *Sander v. Wright*, 394 N.W.2d 896, 900–01 (S.D.1986)(Fosheim, J., concurring in result)(quoting *Northwest Realty Co. v. Colling*, 82 S.D. 421, 433, 147 N.W.2d 675, 683 (1966)). Actions based on fraud "shall not be deemed to have accrued until the aggrieved party discovers, or has actual or constructive notice of, the facts constituting the fraud." SDCL 15-2-3.

[¶ 13.] A claim accrues under the fraud discovery rule even when one may not yet know all the underlying facts or the full extent of damages. *Witherspoon v. Sides Const. Co., Inc.*, 219 Neb. 117, 362 N.W.2d 35, 41 (1985); *see also Steuben v. City of Lincoln*, 249 Neb. 270, 543 N.W.2d 161, 163 (1996)(citing *Association of Commonwealth Claimants v. Moylan*, 246 Neb. 88, 517 N.W.2d 94, 102 (1994)). Statutes of limitations begin to run when plaintiffs first become aware of facts prompting a reasonably prudent person to seek information about the problem and its cause. *Woodroffe v. Hasenclever*, 540 N.W.2d 45, 48 (Iowa 1995); *Pembee Mfg. Corp. v. Cape Fear Const. Co., Inc.*, 313 N.C. 488, 329 S.E.2d 350, 354 (1985)(that further damage which plaintiff did not expect was discovered does not bring about a new cause of action); *Dancor Intern., Ltd. v. Friedman, Goldberg & Mintz*, 288 Ill.App.3d 666, 224 Ill.Dec. 302, 681 N.E.2d 617, 625 (1997); *Murray v. Fleischaker*, 949 S.W.2d 203, 206 (Mo.Ct.App.1997)(when damages become capable of ascertainment statute of limitations is put in motion).

### B. Fraudulent Concealment Tolling Accrual

[¶ 14.] Unlike tolling until discovery in fraud cases, fraudulent concealment applies not when an action remains merely undiscovered, but when actionable conduct or injury has been concealed by deceptive act or artifice. Without a confidential or fiduciary relationship, fraudulent concealment consists of "some affirmative act or conduct on the part of the defendant designed to prevent, and which does prevent, the discovery of the cause of action." *Koenig v. Lambert*, 527 N.W.2d 903, 905–06 (S.D.1995), *overruled on other grounds, Stratmeyer v. Stratmeyer*, 1997 SD 97, 567 N.W.2d 220. Fraudulent concealment tolls the statute of limitations until the claim is discovered or might have been discovered with reasonable diligence. *Bruske v. Hille*, 1997 SD 108, ¶ 19, 567 N.W.2d 872, 879; *Schuster v. Woodmen Acc. & Life Co.*, 361 N.W.2d 286, 288 (S.D.1985); *Holy Cross Parish v. Huether*, 308 N.W.2d 575, 577 (S.D.1981); *Conway v. Conway*, 487 N.W.2d 21, 23 (S.D.1992).

[¶ 15.] Nothing in the present record supports any trust or confidential relationship. Therefore, Strassburg must show the Bank took affirmative steps to prevent discovery of his claim or its underlying facts. *Koenig*, 527 N.W.2d at 905–06 (citing *Conway*, 487 N.W.2d at 23); *Hinkle v. Hargens*, 76 S.D. 520, 525, 81 N.W.2d 888, 891 (1957). Strassburg must further show he nonetheless "exercised diligence to discover the cause of action." *Bruske*, 1997 SD 108, ¶ 19, 567 N.W.2d at 879; *Hinkle*, 76 S.D. at 524–25, 81

N.W.2d at 891. Fraudulent concealment will not toll the statute of limitations, no matter the nature of the concealment, if a plaintiff is already on notice of a cause of action. *Dierking v. Bellas Hess Superstore, Inc.,* 258 N.W.2d 312, 314 (Iowa 1977); *Hobson v. Wilson,* 737 F.2d 1, 35 (D.C.Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985).

### C. Representations of Fact From the Bank's Attorney

[¶ 16.] Strassburg's case for tolling the statute because of undiscovered fraud or fraudulent concealment hinges on the two letters from the Bank's attorney. In particular, the attorney's letter dated May 28, 1985 stated, *"I can now confirm for you that there was only one setoff, that being in the amount of $24,898.56."* The Code of Professional Responsibility in effect at the time provided:

**DR 7–102 Representing a Client Within the Bounds of the Law.**

(A) In his representation of a client, a lawyer shall not:

     \*    \*    \*    \*    \*    \*

(6) Participate in the creation or preservation of evidence when he knows or it is obvious that the evidence is false.

(7) Counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent.... [4]

Strassburg concedes he now knows that the Bank's attorney alone committed no fraud against him; the attorney was merely an innocent conduit for allegedly false information supplied by the Bank. Nonetheless, from the time of the letters and for years afterwards, Strassburg said he believed these representations. The attorney's personal and absolute statement of fact, *"I can now confirm for you,"* ethically bound to be truthful, seems to place a patina of veracity on what might otherwise be merely the delivery of a client's position or the expression of an opinion.

[¶ 17.] "The general rule is that admissions, if relevant and material, made by an attorney incidental to the general authority of the attorney to represent [the] client in connection with and for the purpose of controlling the matter committed to [the attorney], are admissible against the client." *Tuite v. Stop & Shop Cos., Inc.,* 45 Conn. App. 305, 696 A.2d 363, 369 (1997); *Nissel v. Lloyds of London,* 62 Cal.App.4th 1103, 73 Cal.Rptr.2d 174, 177 (1998)(letter written by counsel constituted admission by client). *See also* SDCL 19–16–3, (Rule 801(d)(2)(3)). In cases dealing with notice statutes, we have held that an attorney's conduct on behalf of a client may preclude that client from later exercising a right inconsistent with the attorney's earlier action.

> In reference to notice statutes, we have consistently held that defendants have no duty to call to a plaintiff's attention the fact that a time period is running which, if allowed to expire, may result in a nonsuit. However, where a defendant affirmatively creates an objectively reasonable impression in the plaintiff that the plaintiff has fully complied with the notice statute, it cannot later attempt to raise the notice statute as a defense. See, e.g., *Erickson v. County of Brookings,* 1996 SD 1, ¶ 16, 541 N.W.2d 734, 737; *Smith v. Neville,* 539 N.W.2d 679, 681–82 (S.D.1995).

*Tunender v. Minnaert,* 1997 SD 62 ¶ 15, 563 N.W.2d 849, 852.

[¶ 18.] So also may the Bank be prevented from asserting as a matter of law that its attorney's letters put Strassburg and his lawyer on notice that a much larger sum might have been taken and that Strassburg should have investigated to discover the full extent of the setoff. Of course, a party cannot blindly rely on the representations of an adversary attorney, for to impose on a lawyer a duty to the other side would create situations inimical to the ethical rules governing attorney conduct. Attorneys must avoid

---

4. In December 1987, this Court repealed the Code of Professional Responsibility and enacted the South Dakota Rules of Professional Conduct, presently in effect. The pertinent rules are essentially the same: See Rule 3.4(a) and 4.1: "In the course of representing a client a lawyer shall not knowingly: (a) make a false statement of material fact or law to a third person; (b) fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6."

conflicts of interest and maintain their clients' confidentiality. They have·no duty to protect the interests of adverse parties. *Skarbrevik v. Cohen, England, & Whitfield,* 231 Cal.App.3d 692, 282 Cal.Rptr. 627, 634 (1991)(strong public policy in maintaining and enforcing fidelity and duty of attorney toward client militates against imposing duty to nonclients); *Fox v. Pollack,* 181 Cal. App.3d 954, 226 Cal.Rptr. 532, 533 (1986).

▪ [¶ 19.] On the other hand, a rule insulating clients from their attorneys' false or misleading statements, made at the behest or with the consent of a client, would allow parties to misrepresent with impunity. Statute of limitations questions are usually jury questions. If the Bank concealed the full extent of its setoff; when Strassburg had actual or constructive knowledge of a claim; and whether he exercised diligence to discover his cause of action are all issues of fact for the jury.

[¶ 20.] Summary judgment is reversed.

[¶ 21.] MILLER, C.J., and SABERS, AMUNDSON and GILBERTSON, JJ., concur.

