#27394-a-LSW

**2015 S.D. 85**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

IN THE MATTER OF THE
ESTATE OF ROBERT L. CULLUM, Deceased.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE  SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE ROBERT GUSINSKY
Judge

\* \* \* \*

JOHN K. NOONEY
ROBERT J. GALBRAITH of
Nooney & Solay, LLP
Rapid City, South Dakota                    Attorneys for claimant and
                                            appellant Duane Pankratz.


SHANE M. PULLMAN
JESS M. PEKARSKI of
Costello Porter Hill Heisterkamp
  Bushnell & Carpenter, LLP
Rapid City, South Dakota                    Attorneys for appellee Estate of
                                            Robert L. Cullum.

\* \* \* \*

CONSIDERED ON BRIEFS
ON OCTOBER 5, 2015

OPINION FILED **11/04/15**

#27394

WILBUR, Justice

[¶1.] Duane Pankratz appeals the circuit court's decision granting summary judgment on his claims against Robert Cullum's estate for breach of an oral promise to transfer corporate stock and for the recovery of corporate debt Robert Cullum personally guaranteed to pay. We affirm.

## Background

[¶2.] Duane Pankratz and Robert Cullum have been neighbors since the 1970s. Prior to his death in 2012, Cullum owned and operated Mineral Technology Corporation (MinTec). At some point between 2000 and 2003, Cullum and his son Scott approached Pankratz for a loan because, according to Pankratz, MinTec was "facing bankruptcy." Pankratz explained that Cullum believed MinTec "was very close to coming up with some great materials to sell and they just felt they needed a little more time, relief, pressure from the bankers and other agencies that had loaned them money." Pankratz agreed to loan MinTec money, although he could not recall the exact amount of the loan. Pankratz later claimed that in exchange for the loan, Cullum personally guaranteed the debt and promised to give Pankratz the same personal guaranty Cullum had given to the bank. Pankratz also claimed that Cullum promised to give him MinTec stock equal to that held by Cullum. Neither the personal guaranty nor promise to transfer MinTec stock was reduced to writing.

[¶3.] Over the next many years, Pankratz continued to loan MinTec money. Pankratz claimed that he and MinTec executed approximately twenty promissory notes related to the loans. Pankratz later claimed that each time he and Cullum executed a note, they renegotiated the payment terms and Cullum personally

-1-

guaranteed MinTec's debt. It is undisputed that in 2007, MinTec was delinquent on its debt to Pankratz. Pankratz and MinTec consolidated the previously-executed promissory notes into two promissory notes totaling $1,557,370.70. Cullum signed the notes in his capacity as president of MinTec. As security for the loans, Pankratz and MinTec executed an agreement whereby Pankratz took an interest in all MinTec's currently-owned and after-acquired personal property, including inventory and equipment. Pankratz also took a mortgage on certain real property owned by MinTec. Lastly, Cullum's wife, Mary Cullum, mortgaged four parcels of real property to Pankratz as additional security. The mortgage identified that the real property was leased to MinTec, and provided that "the proceeds from an [sic] foreclosure" would not be applied to the amount due on the promissory notes until after Pankratz exhausted recovery via MinTec.

[¶4.]     After MinTec and Pankratz executed the consolidated promissory notes, MinTec made payments to Pankratz on the debt. By 2012, MinTec had paid Pankratz approximately $1,500,000. In January 2012, Cullum unexpectedly died. On February 11, 2012, The Estate of Robert L. Cullum (Estate) published a notice to creditors. Pankratz filed a statement of claim against the Estate providing:

> The Claimant made substantial loans to Mineral Technology Corporation ("MinTec") pursuant to an agreement with the Decedent, nearing $2 million of which $300,000 is still outstanding. In addition to promising to repay the rescue loan amounts, the Claimant was promised by the Decedent that the Claimant would be given an equal number of shares in MinTec as that owned by the Decedent.

The Estate disallowed the claim, and Pankratz petitioned the circuit court to allow the claim. The record reveals that Pankratz also brought a separate suit against MinTec related to debt due on the promissory notes.

[¶5.] The Estate moved for summary judgment asserting that there existed no binding personal guaranty between Cullum and Pankratz and that the statute of limitations barred Pankratz's claim for MinTec shares. In response, Pankratz asserted that a material issue of fact was in dispute, whether Cullum personally guaranteed MinTec's debt, because, according to Pankratz, he loaned money to MinTec solely on Cullum's personal assurances. Pankratz further claimed that the statute of limitations was tolled on his claim that Cullum breached their oral agreement to transfer MinTec stock. The statute of limitations was tolled, Pankratz argued, because he continued to loan MinTec money on the continued promise by Cullum to transfer stock.

[¶6.] After considering the parties' written briefs, arguments, and the record, the circuit court issued a memorandum decision. It ruled that the promissory notes, security agreement, and mortgage were "complete and unambiguous." It, therefore, refused to consider any extrinsic evidence that Cullum personally guaranteed the loans between MinTec and Pankratz. The circuit court alternatively ruled that even if it did consider Pankratz's evidence, the personal guaranty would be unenforceable because it was not in writing as required under SDCL 56-1-4 and the circumstances did not warrant application of the limited exception in SDCL 56-1-6. Lastly, the court concluded that the undisputed evidence established Pankratz was aware in 2004 that Cullum failed to transfer the stock, and therefore, the statute of limitations expired on Pankratz's claim that Cullum breached the parties' oral agreement.

[¶7.] Pankratz appeals and raises the following issues for our review:

1. Whether the parol evidence rule bars evidence related to Cullum's oral promises to Pankratz.

2. Whether there exist questions of material fact precluding summary judgment on Cullum's oral promises to repay the loan of Pankratz.

3. Whether there exist questions of material fact precluding summary judgment on Cullum's oral promise to transfer shares of MinTec to Pankratz.

## Standard of Review

[¶8.] Our review of summary judgment is to "determine only whether a genuine issue of material fact exists and whether the law was correctly applied." *Jacobson v. Leisinger*, 2008 S.D. 19, ¶ 24, 746 N.W.2d 739, 745 (quoting *Cooper v. James*, 2001 S.D. 59, ¶ 6, 627 N.W.2d 784, 787); *Millea v. Erickson*, 2014 S.D. 34, ¶ 9, 849 N.W.2d 272, 275. "All facts and favorable inferences from those facts must be viewed in a light most favorable to the nonmoving party." *Andrushchenko v. Silchuk*, 2008 S.D. 8, ¶ 8, 744 N.W.2d 850, 854 (quoting *Hendrix v. Schulte*, 2007 S.D. 73, ¶ 6, 736 N.W.2d 845, 847). We give no deference to a court's interpretation of a contract; our review is de novo. *Poeppel v. Lester*, 2013 S.D. 17, ¶ 16, 827 N.W.2d 580, 584.

## Analysis

### 1. Personal Guaranty

[¶9.] Pankratz first asserts that the circuit court erred when it refused to consider whether an oral agreement exists between Cullum and Pankratz whereby Cullum personally guaranteed MinTec's debt to Pankratz. In his reply brief to this Court, Pankratz contends that the parol evidence rule is not implicated because

there is no *writing* to supersede the oral negotiations between him and Cullum. Pankratz makes this claim by isolating his oral agreement with *Cullum* from his written promissory notes with *MinTec*. Pankratz further argues that the parol evidence rule does not apply because he is not trying to use Cullum's oral promise to vary the terms of the written agreements between Pankratz and MinTec.

[¶10.]     The parol evidence rule provides that "[t]he execution of a *contract in writing*, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." SDCL 53-8-5 (emphasis added). Even if we accept Pankratz's claim that the parol evidence rule is not implicated because there is no writing related to Cullum's oral promise, Cullum's personal guaranty is still unenforceable. Under SDCL 56-1-4 "a guaranty *must be in writing* and signed by the guarantor[.]" (Emphasis added.)

[¶11.]     Pankratz, however, contends that the exception to the writing requirement under SDCL 56-1-6 applies. There are limited exceptions to the requirement that a guaranty be in writing. *See Builders Supply Co., Inc. v. Carr*, 276 N.W.2d 252, 256 (S.D. 1979). Relevant here is the exception provided by SDCL 56-1-6:

> A promise to answer for the obligation of another is deemed an original obligation of the promiser and need not be in writing where the creditor parts with value or enters into an obligation, in consideration of the obligation in respect to which the promise is made, in terms or under circumstances such as to render the party making the promise the principal debtor, and the person in whose behalf it is made his surety.

In *Builders Supply Co., Inc.*, we explained that "[i]n essence, the exception states that where the creditor parts with value in reliance on the oral promise under circumstances which render the party making the promise the principal debtor, there need not be a writing." 276 N.W.2d at 256.

[¶12.]     According to Pankratz, he parted with value (his money) "solely" in reliance on the continued oral assurances by Cullum that Cullum would pay on MinTec's debt. Pankratz emphasizes that MinTec was going bankrupt and that it was in Cullum's interest that Pankratz loan money to MinTec. Pankratz contends, therefore, that there is a material issue of fact in dispute whether Cullum became the "principal debtor."

[¶13.]     From our review of the record, the circumstances do not implicate the limited exception under SDCL 56-1-6. Pankratz merely relies on his conclusory and unsupported testimony that he loaned money to MinTec solely on Cullum's credit. Yet, "[g]eneral allegations which do not set forth specific facts will not prevent summary judgment." *BAC Home Loans Servicing, LP v. Trancynger*, 2014 S.D. 22, ¶ 15, 847 N.W.2d 137, 141. It is undisputed that the promissory notes were executed between MinTec and Pankratz. The notes contain identical language recognizing that Pankratz "previously made loans" to MinTec "on varying dates and in varying amounts." Nothing in the notes indicates that Cullum's credit was a consideration. On the contrary, the notes provide:

> In consideration of extending the due dates of those notes which
> are now delinquent and in further consideration of extending the
> due dates of notes which are not now delinquent but which
> would become delinquent before the due date of this Promissory
> Note and for other good and valuable consideration, Maker shall
> pay to Payee the amount of Five Hundred Forty-eight Thousand

> Three Hundred Sixty-five Dollars and Sixty-nine Cents ($548,365.69) with interest[.]

Further, MinTec paid Pankratz on the loans and the debt was listed in Pankratz's accounts as MinTec's obligation. *See Wood v. Dodge*, 23 S.D. 95, 120 N.W. 774, 775 (1909) ("an important consideration is the manner in which the creditor entered the transaction in his books"). Because Pankratz identifies no specific fact in dispute to support that Cullum became the principal debtor, the circuit court did not err when it ruled that Cullum's personal guaranty must be in writing to be enforceable.

[¶14.] We decline to address Pankratz's additional claims that the circuit court erred when it granted the Estate summary judgment because (1) the parties intended the word "guarantor" in the promissory notes to mean Cullum, (2) the doctrine of promissory estoppel applies, (3) the parties' subsequent conduct modified the agreement, and (4) there is evidence of fraud. On these claims, Pankratz furnishes general allegations unsubstantiated by "sufficient probative evidence that would permit a finding in his favor[.]" *See Tolle v. Lev*, 2011 S.D. 65, ¶ 11, 804 N.W.2d 440, 444 (quoting *Schwaiger v. Mitchell Radiology Assocs., P.C.*, 2002 S.D. 97, ¶ 7, 652 N.W.2d 372, 376). To survive summary judgment, Pankratz must rely "on more than mere speculation, conjecture, or fantasy." *See id.* Pankratz has failed to meet his summary judgment burden.

### 2. Oral Agreement to Transfer Stock

[¶15.] Pankratz lastly contends that the circuit court erred when it granted summary judgment on his claim that Cullum breached the parties' oral agreement to transfer MinTec stock. He argues that there is a disputed issue of material fact whether the statute of limitations expired because Cullum's promise to transfer the

stock was "continuous," and Pankratz did not learn that Cullum breached the agreement until 2011. The Estate responds that Pankratz's deposition testimony establishes that Pankratz was aware of his claim that Cullum breached the contract in 2004.

[¶16.] An action for a breach of contract has a six-year statute of limitations. SDCL 15-2-13(1). "Deciding what constitutes accrual of a cause of action . . . entailing statutory construction, presents an issue of law." *Strassburg v. Citizens State Bank*, 1998 S.D. 72, ¶ 7, 581 N.W.2d 510, 513. A cause of action accrues when a party has actual notice of the cause of action or is charged with notice. *Id.* ¶ 10. "Actual notice consists in express information of a fact." SDCL 17-1-2.

[¶17.] Here, the undisputed evidence establishes that Pankratz had actual notice of the cause of action against Cullum in at least 2004. Pankratz testified in his deposition that Cullum promised at the time of the first loan to MinTec that Cullum would transfer stock to Pankratz. This occurred at some point between 2000 and 2003. Pankratz further explained that Cullum should have transferred the stock to him within "a matter of months, like within the first year" of the time Pankratz first loaned MinTec money. This means Pankratz believed Cullum had an obligation to transfer MinTec stock to him at the latest in 2004. According to Pankratz, Cullum told him approximately two or three months after the promise that he could not transfer MinTec stock. Thus, in approximately 2003 or 2004, Pankratz was on notice that a breach occurred, and the clock started running on the statute of limitations. Under the circumstances, it is immaterial that Pankratz made future decisions to loan MinTec money. "Statutes of limitations begin to run

when plaintiffs first become aware of facts prompting a reasonably prudent person to seek information about the problem and its cause." *Strassburg*, 1998 S.D. 72, ¶ 13, 581 N.W.2d at 515. Moreover, there is no evidence that Cullum took affirmative steps to prevent Pankratz from discovering his cause of action. *See id.* ¶ 15 (fraudulent inducement will not toll the statute of limitations if plaintiff is on notice of the cause of action). Because Pankratz failed to bring his claim within six years of 2004, the circuit court did not err when it granted the Estate summary judgment.

[¶18.]    Affirm.

[¶19.]    GILBERTSON, Chief Justice, and ZINTER and SEVERSON, Justices, concur.

[¶20.]    KERN, Justice, deeming herself disqualified, did not participate.