#28491-a-JMK
**2019 S.D. 56**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

BRET HEALY,                                        Plaintiff and Appellant,

     v.

MARY ANN OSBORNE, BRYCE HEALY,
BARRY HEALY, HEALY RANCH
PARTNERSHIP, HEALY RANCH, INC.,
and ALBERT STEVEN FOX,                             Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
BRULE COUNTY, SOUTH DAKOTA
\* \* \* \*

THE HONORABLE CHRIS S. GILES
Judge
\* \* \* \*

CYNTHIA L. SRSTKA
Sioux Falls, South Dakota                          Attorney for plaintiff
                                                   and appellant.


JACK H. HIEB
ZACHARY W. PETERSON of
Richardson, Wyly, Wise,
   Sauck & Hieb, LLP
Aberdeen, South Dakota                             Attorneys for appellees
                                                   Mary Ann Osborne and
                                                   Healy Ranch Partnership.


LEE A. SCHOENBECK of
Schoenbeck Law, P.C.
Watertown, South Dakota                            Attorneys for appellees Healy
                                                   Ranch, Inc., Barry Healy and
                                                   Bryce Healy.

\* \* \* \*

CONSIDERED ON BRIEFS
ON NOVEMBER 12, 2018
OPINION FILED **09/25/19**

KARA C. SEMMLER of
May, Adam, Gerdes
   and Thompson, LLP
Pierre, South Dakota

Attorneys for appellee
Albert Steven Fox.

#28491

KERN, Justice

[¶1.]    Bret Healy sued his mother, brothers, former attorney, and two business entities for monetary relief, claiming he was financially damaged by their fraud and conspiracy and deprived of control over the family ranch. The court granted summary judgment to the defendants, dismissing Bret's lawsuit based on the statute of limitations. It awarded attorney fees to the defendants. We affirm.

## Facts and Procedural History

[¶2.]    This appeal arises out of a bitter family dispute over ownership and control of the Healy family's ranch (Healy Ranch). Bret is the oldest son of Mary Osborne (Mary) and the late Robert Healy. He sued his mother along with his two younger brothers, Bryce and Barry. He also sued the Healy family's attorney, Steven Fox (Fox), and two business entities, Healy Ranch Partnership and Healy Ranch, Inc. (collectively, the defendants). Bret asserted a variety of tort and contract claims and sought compensatory damages. According to Bret, he owns at least 50% of Healy Ranch pursuant to his interests in the two entities involved in the suit.

[¶3.]    The Healy family has owned or occupied Healy Ranch since 1887. Bret's grandfather, Emmett Healy, farmed the land with his wife, DeLonde, until his death in 1969. Prior to his death, Emmett created a partnership in which he equally divided ownership of Healy Ranch between himself and Robert, Bret's father. When Emmett passed away, his wife, DeLonde, inherited his half of the Healy Ranch partnership, and Robert retained his 50% interest.

-1-

#28491

[¶4.]     Three years after Emmett's death, Robert and DeLonde created another partnership (the 1972 partnership) in which Robert agreed to share his one-half interest with his wife, Mary, jointly.  DeLonde owned the remaining half.  While the parties never signed the partnership agreement, they executed and recorded a deed transferring Healy Ranch into the partnership.  The agreement between Mary, Robert, and DeLonde continued until Robert died in a tractor accident on November 11, 1985, leaving Mary as the sole owner of Robert's 50% share.

[¶5.]     Not long after Robert's unexpected death, the Healy family met to discuss the future of Healy Ranch.  They decided to pass some responsibility onto Robert's oldest son, Bret.  Consequently, on January 25, 1986, DeLonde, Bret, and Mary executed an agreement to create a third Healy Ranch partnership (the 1986 partnership).  This agreement granted Bret 25% and Mary 75% ownership interest in Healy Ranch.  DeLonde relinquished all control over the ranch in exchange for various benefits and a right of first refusal to purchase a portion of the ranch if it was offered for sale.  The parties signed a general warranty deed to effectuate the agreement in 1989.  In that deed, DeLonde transferred her entire interest in the land to Bret.  Originally, DeLonde held a 50% interest in the 1972 Healy Ranch partnership.  However, pursuant to the terms of the 1986 partnership agreement, Bret received her entire interest, which was listed as only 25%.  Mary received 75%.  This instrument was never recorded.

[¶6.]     Approximately nine years later, on March 12, 1995, Mary and DeLonde executed another warranty deed purporting to transfer Healy Ranch from

the terminated 1972 partnership to Healy Ranch, Inc., a corporation exclusively owned by Mary.[1] Fox prepared the 1995 deed and on March 13, 1995, it was filed with the Register of Deeds in Brule County. Fox represented the corporation from 1995 until 2013 when his license to practice law was temporarily suspended.

[¶7.]     Bret served as president of Healy Ranch, Inc. for approximately seventeen years, beginning in 1999. In 2000, Bret, Bryce, and Barry each purchased a one-third interest in Healy Ranch, Inc. from Mary pursuant to a contract for deed. In addition, the brothers participated in managing the corporation as directors. Bret also engaged in several transactions and activities involving the corporation. As president of Healy Ranch, Inc., he signed mortgages on behalf of the corporation in 1999, 2002, 2003, 2005, twice in 2008, and in 2014. Each of the mortgages represent that Healy Ranch, Inc. is the sole owner of the property. In 2007, he also purchased land from the corporation on which he built his house without indicating the partnership owned any portion of the property. Fox advised Bret throughout this transaction.

[¶8.]     In 2013, Bret hired a different attorney and commenced a lawsuit on behalf of Healy Ranch, Inc. against another party to recover for damage to fences located on the ranch. Bret did not name the partnership as a party. In his

---

1.     Bret also alleged that Mary, with the assistance of Fox, fraudulently transferred two lots—RH-1 and RH-2—out of the partnership property in 1988 and 1992. He alleged that the 1986 partnership owned both RH-1 and RH-2, and that Mary signed two warranty deeds in her individual capacity and as executrix of the Robert E. Healy Estate to unlawfully transfer the lots to other individuals.

discovery responses in that lawsuit, Bret alleged that the land and the fences involved belonged to Healy Ranch, Inc.

[¶9.]     In 2016, Bret, Bryce, and Barry discussed the possibility of selling Healy Ranch. At a special meeting held on October 27, 2016, Barry moved to sell all the real property owned by the corporation if a gross sale price of $5 million was achieved. Pursuant to his motion, the property would not be sold for at least seven years if a buyer did not match their price. Bryce and Barry voted in favor of the conditions. Although Bret voted against the sale and the conditions thereto, in March 2017, he agreed to the sale of Healy Ranch. A bill of sale, which was introduced into evidence, referred to the owner of the land as Healy Ranch, Inc. Additionally, on March 2, 2017, Bret recognized Healy Ranch, Inc. as the owner of the property by signing an agreement requesting reimbursement from the corporation for improvements made to the property.

[¶10.]     On April 3, 2017, Bret met with an attorney to advise him regarding his interests in Healy Ranch. Bret claimed that during this meeting, he learned for the first time of the deed recorded in March 1995 transferring Healy Ranch to Mary's corporation. Bret alleged that upon further investigation, he discovered Fox, Mary, and Bryce had created "false corporate resolutions, false title information, and sixteen forgeries of [his] signature on corporate minutes." He asserted Fox was responsible for forging his signature on corporate minutes from 2000 to 2008.

[¶11.]     Bret filed the present action on May 11, 2017, charging all of the defendants with conversion, fraud, and conspiracy to commit fraud. In addition, he sued Mary for breach of contract, breach of the implied covenant of good faith and

fair dealing, breach of fiduciary duties, and negligence.  He also alleged Mary, Bryce, Barry, Healy Ranch, Inc., and the Healy Ranch partnership were unjustly enriched and requested that the court pierce the corporate veil of Healy Ranch, Inc.  In his complaint, he requested punitive and compensatory damages.

[¶12.]      Contemporaneous with this filing, Bret took out several ads in farm-related journals publicizing his claim that Healy Ranch, Inc. lacked clear title to Healy Ranch.  Two weeks prior to initiating the present action, Bret sent letters to Wells Fargo, First National Bank, Brule County Abstract, and the Brule County Register of Deeds, alleging that the corporation did not have good title to Healy Ranch.  This placed the corporation in default on its outstanding note and mortgage with Wells Fargo.  Even though Bret sought only money damages in his lawsuit and not the recovery of real property, he filed a notice of lis pendens to cloud the title of Healy Ranch.

[¶13.]      At a special meeting on May 19, 2017, Bryce and Barry voted to remove Bret as president of the corporation.  Bret attended, casting the sole vote against his removal.  The brothers also voted to rescind the conditions for sale of Healy Ranch that they had agreed upon on October 27, 2016.

[¶14.]      On September 1, 2017, Healy Ranch, Inc., Bryce, and Barry moved for summary judgment based upon the statute of limitations.  Fox joined this motion. Mary and the Healy Ranch Partnership also moved for summary judgment on September 6, 2017, alleging Bret's claims were time barred and that he failed to make a sufficient showing to establish damages caused by Mary or Healy Ranch Partnership.

[¶15.]     The circuit court issued a memorandum decision on October 13, 2017, granting the defendants' motions for summary judgment on all claims, holding the six-year statute of limitations in SDCL 15-2-13 and the three-year statute of limitations governing malpractice claims against attorneys in SDCL 15-2-14.2 had expired.  In reaching this conclusion, the court determined that starting in 1999, Bret "executed a series of documents and participated in a number of transactions on behalf of Healy Ranch, Inc., that should have given [Bret] actual knowledge that Healy Ranch, Inc. was claiming an interest in the real estate at issue in this action."  The court further held that even if Bret did not have actual knowledge, he had at least constructive notice that Healy Ranch, Inc. was claiming an interest in the land sufficient to put a "prudent man on notice to make an inquiry into this situation[,]" an inquiry Bret failed to make.

[¶16.]     Following the circuit court's decision, the defendants moved for attorney fees pursuant to SDCL 15-17-51.  The circuit court granted their respective motions, awarding attorney fees, sales tax and costs in the total amount of $83,295.42 (Mary $32,606.54; Bryce, Barry, and Healy Ranch, Inc. $38,283.88; and Fox $12,405).  The circuit court entered detailed findings of fact and conclusions of law setting forth its reasons for concluding that Bret's lawsuit was frivolous and malicious.  In one such finding, the court determined that the letters Bret and his attorney sent to the banks indicating Healy Ranch, Inc. did not have good title to the property established Bret's malicious "intent to interfere with the financing for a sale of Healy Ranch, Inc."  In another finding, the court characterized Bret's action as "utterly frivolous."

[¶17.] Bret appeals, raising numerous issues for our review, which we restate and consolidate as follows:

1. Whether the circuit court erred by granting summary judgment in favor of the defendants on all claims.

2. Whether the circuit court utilized the proper procedure when granting the defendants' motions for summary judgment.

3. Whether the circuit court erred by awarding attorney fees to defendants.

**Standard of Review**

[¶18.] In assessing summary judgment on appeal, "we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law . . . ." *Strassburg v. Citizens State Bank*, 1998 S.D. 72, ¶ 5, 581 N.W.2d 510, 513. "The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party." *Id.* However, "[t]he nonmoving party must present specific facts which demonstrate a genuine, material issue for trial." *Specialty Mills, Inc. v. Citizens State Bank*, 1997 S.D. 7, ¶ 27, 558 N.W.2d 617, 625.

[¶19.] "In response to a summary judgment motion where the defendant asserts the statute of limitations as a bar to the action and presumptively establishes the defense by showing the case was brought beyond the statutory period, the burden then shifts to the plaintiff to establish the existence of material facts in avoidance of the statute of limitations, e.g., fraud or fraudulent concealment." *Strassburg*, 1998 S.D. 72, ¶ 5, 581 N.W.2d at 513.

## Analysis and Decision

[¶20.] Before we address whether summary judgment was properly granted, we briefly examine Bret's claim that the circuit court was first required to resolve his ownership claim to Healy Ranch. According to Bret, he retains an interest in Healy Ranch through his ownership interest in the 1986 partnership irrespective of any attempt by Mary to fraudulently transfer Healy Ranch into her corporation by executing the 1995 deed. To support this argument, Bret relies on *Estate of Henderson v. Estate of Henderson*, 2012 S.D. 80, 823 N.W.2d 363.[2]

[¶21.] We decline to address Bret's claim of ownership because the threshold issue in this case centers on the timeliness of Bret's claims for conversion, breach of contract, fraud, conspiracy to commit fraud, unjust enrichment, breach of fiduciary duties, and negligence. Each of these causes of action are subject to the six-year statute of limitations under SDCL 15-2-13. Therefore, even if Bret retained an

---

2. In *Henderson*, Walter Henderson brought a quiet title action requesting that the court determine ownership of his property interest in mineral rights. He obtained the mineral rights through a valid agreement that he recorded which was then reflected on the property's chain of title. Walter presented evidence to the circuit court that he consistently asserted his rights over the minerals by negotiating oil and gas leases. He also received bonus payments following execution of those leases. *Id.* ¶ 18, 823 N.W.2d at 369. We concluded that the circuit court did not err when it determined Walter's ownership interest. We further concluded that the statute of limitations did not bar Walter's quiet title action.

   *Henderson* is both legally and factually distinguishable. Bret did not bring a quiet title action challenging ownership to Healy Ranch. Additionally, contrary to the situation in *Henderson* where the owner filed documents reflecting his 30% mineral interest and regularly asserted his ownership, Bret consistently represented that Healy Ranch, Inc. owned the land.

ownership interest in Healy Ranch through the 1986 partnership, he must nonetheless timely commence suit within the applicable statute of limitations.

## I. Whether the circuit court erred by granting summary judgment in favor of defendants on all claims.

[¶22.]     All of Bret's tort and contract claims are governed by the six-year statute of limitations in SDCL 15-2-13. With respect to his claims against Fox, Bret argues the circuit court erred by applying the shorter attorney malpractice statutory period in SDCL 15-2-14.2 to his fraud and conversion claims because these claims properly fall within the provisions of SDCL 15-2-13 and its six-year statute of limitations. Bret's assertion of error on this basis is perplexing because the circuit court dismissed Bret's claims against Fox as untimely under *both* SDCL 15-2-13 and SDCL 15-2-14.2.[3]

[¶23.]     Because the circuit court dismissed all claims as time barred under SDCL 15-2-13, we must examine whether Mary, Bryce, Barry, Healy Ranch, Inc., Healy Ranch partnership, and Fox (defendants) have "presumptively establishe[d] the [statute of limitations] defense by showing the case was instituted beyond the statutory period[.]" *Kurylas, Inc. v. Bradsky*, 452 N.W.2d 111, 117 (S.D. 1990). It is undisputed that Bret commenced suit against these defendants in May 2017. It is further undisputed that May 2017 is more than twenty-two years from the date Mary and DeLonde executed the 1995 warranty deed conveying the ranch property

---

3.     SDCL 15-2-14.2 provides: "An action against a licensed attorney, his agent or employee, for malpractice, error, mistake, or omission, whether based upon contract or tort, can be commenced only within three years after the alleged malpractice, error, mistake, or omission shall have occurred. This section shall be prospective in application."

to Healy Ranch, Inc. Having met their presumption, Bret now carries the burden of "establish[ing] the existence of material facts in avoidance of the statute of limitations[.]" *Id.*

[¶24.]     Bret claims the defendants' fraud tolls the running of the statute of limitations.[4] While fraudulent concealment sometimes warrants tolling the statutory period, it "will not toll the statute of limitations, no matter the nature of the concealment, if a plaintiff is already on notice of a cause of action." *Gades v. Meyer Modernizing Co., Inc.*, 2015 S.D. 42, ¶ 13, 865 N.W.2d 155, 160. "Actual notice consists in express information of a fact." SDCL 17-1-2. "Constructive notice is notice imputed by the law to a person not having actual notice." SDCL 17-1-3. "One having actual notice of circumstances sufficient to put a prudent person on inquiry about 'a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself.'" *Strassburg*, 1998 S.D. 72, ¶ 10, 581 N.W.2d at 514 (quoting SDCL 17-1-4).

[¶25.]     Bret admits that he authorized several mortgages on behalf of the corporation representing that Healy Ranch, Inc. was the sole owner of the property.

---

4.     Bret also contends that fraud eliminates the applicability of the statute of limitations to this case because even if he failed to timely file his claims, "[t]he perpetrator of the fraud cannot avoid his acts by a showing that the person upon whom the fraud was committed was negligent." *Hauck v. Crawford*, 75 S.D. 202, 204, 62 N.W.2d 92, 93 (1953). But *Hauck* is distinguishable on two grounds. First, the defendants in *Hauck* did not raise the statute of limitations defense. Second, the case was decided on the principle of equitable estoppel. Although, on appeal, Bret asserts several new theories of equitable relief, including estoppel, reformation, and nullification of the 1995 deed, we decline to "address issues raised for the first time on appeal[.]" *Kreisers Inc. v. First Dakota Title Ltd. P'ship*, 2014 S.D. 56, ¶ 46, 852 N.W.2d 413, 425.

Yet, he claims the mortgage documents did not "excite any suspicion . . . ." in him.[5]

Rather than focusing on Bret's execution of the mortgages, Bret claims the circuit

court should have focused on "the defendants' fiduciary duties" towards him.[6]

[¶26.]    Bret also acknowledges that he signed a warranty deed when he

purchased land from Healy Ranch, Inc. in 2007 on which to build his house without

indicating he believed he already owned a portion of the property due to his interest

in the 1986 partnership. But because Fox reviewed the documents, Bret claims he

was entitled to rely on Fox, as his attorney, to protect his interests. Although Bret

acknowledges that Healy Ranch, Inc. was listed as the only grantor on the deed, in

Bret's view, this was insufficient to notify him that the partnership no longer held

an ownership interest.

---

5.    Bret argues he was not "bound to search records under [SDCL 43-28-15]" because he did not encumber the property with the 1995 deed. He also maintains that the defendants should not be permitted to use "th[e] statute to shield themselves from their victims" when the deed they filed was fraudulent.

6.    Bret argues that the statute is tolled by his continuing fiduciary relationship with Mary. Bret claims Mary retained 20.89% of the corporation because she only conveyed 162,000 shares to her sons pursuant to the 2000 contract for deed rather than the entire 299,348 shares she began with. Thus, he alleges he remains in a fiduciary relationship with her because she maintains her status as one of the majority shareholders in a closely-held corporation. This argument is without merit.

No evidence exists suggesting Mary intended to retain any managerial or financial stake in the corporation. On the contrary, all parties acted as though Bret, Bryce, and Barry had exclusive control over the ranch after 2000. Mary neither voted nor held corporate offices after executing the contract. Because Mary's fiduciary relationship with Bret terminated in 2000, any claims that Mary breached fiduciary duties are barred by the statute of limitations.

[¶27.] Based on our review of the record, Bret's allegation that a material issue of fact exists regarding whether Bret had notice that Mary executed the 1995 warranty deed is unsupported. The record establishes that Bret had either actual or constructive notice of Mary's 1995 warranty deed by, at the latest, 1999 when, as president of Healy Ranch, Inc., he signed a mortgage with Marquette Bank representing that the corporation had "good and marketable title of record" to Healy Ranch. The mortgage made no mention that the 1986 partnership owned any part of Healy Ranch. It contained only the legal descriptions for the property held by Healy Ranch, Inc.

[¶28.] Moreover, the only reasonable inference we can draw from the undisputed material facts contained in this record is that Bret was keenly aware of the preeminence of the corporation having purchased, along with his two brothers, a one-third interest in the corporation in 2000 by contract for deed. He served for many years as the corporation's president with access to corporate records. He signed seven mortgage agreements on behalf of the corporation. When he individually purchased a parcel of the ranch for his home in 2007, he bought the land from the corporation. He brought a civil action in the sole name of the corporation against a third party seeking to recover for damage to ranch fencing without naming the partnership as a plaintiff.

[¶29.] Although Bret contends his interest in the partnership remained intact, his actions did not reflect this belief. Until shortly before he initiated this action, Bret ignored the partnership following the creation of Healy Ranch, Inc. He did not record the 1986 partnership agreement or the 1989 deed. The partnership

did not file a partnership return or pay property taxes after 1995, and Bret represented that his shares of Healy Ranch, Inc. stock were his only asset on an individual financial statement in November 2001. Bret's comment to Barry in a June 2016 e-mail is also telling. In that correspondence, Bret acknowledged: "I *owned* 25% of the place – mom insisted on 1/3 to everyone – so yes I did put all my chips back in for 8% . . . ." (Emphasis added).

[¶30.] Bret has failed to present any evidence that he could not have discovered the 1995 warranty deed within the statutory period by exercising reasonable diligence. *See Gades*, 2015 S.D. 42, ¶ 9, 865 N.W.2d at 159. To the contrary, by his own admissions, Bret has established that he had actual knowledge. Thus, the circuit court did not err by rejecting Bret's argument that the statute of limitations in SDCL 15-2-13 should be tolled.[7]

[¶31.] We next address the timeliness of any legal malpractice claims Bret's complaint raises against Fox. Like his claims under the six-year statute of limitations provided in SDCL 15-2-13, Bret's cause of action also fails when applied to the shorter statutory period provided by SDCL 15-2-14.2. It is unnecessary to decide whether SDCL 15-2-14.2 is a statute of repose or a statute of limitations with its attendant tolling defenses because the record does not support tolling the

---

7.  Bret also had at least constructive notice of Mary's warranty deeds transferring RH-1 and RH-2 in 1999 when he signed the mortgage with Marquette Bank. In executing that document, Bret signed below the legal description included in "Exhibit A," which listed RH-1 and RH-2 as exceptions to the property owned by Healy Ranch, Inc. Thus, his claims with respect to Mary's sale of RH-1 to Ronald and Velma Scott and sale of RH-2 to Raymond and Evelyn Sharping have also expired.

statutory periods for Bret's causes of action under any theory. *Cf. Pitt-Hart v. Sanford USD Med. Ctr.*, 2016 S.D. 33, 878 N.W.2d 406.

[¶32.]     Bret's actual or constructive notice precludes him from using fraudulent concealment to extend the statutory period. Likewise, Bret cannot use continuous representation to toll the statutory period of the legal malpractice claim because it requires an ongoing professional relationship. *See Kurylas*, 452 N.W.2d at 115. Bret did not have a continuous attorney–client relationship with Fox between 2013 and 2016 because Fox's license to practice law was suspended. Additionally, aside from providing Bret with records for this lawsuit, Fox completed no relevant work for Bret that would extend the statutory period. Bret's argument that Fox's March 2016 letter asking Bret to update the corporate minutes is evidence of a continuing relationship is unpersuasive because Fox sent the correspondence in his capacity as the corporation's lawyer. Similarly, the work Fox completed on a water easement for Bret's property did not involve the "professional services from which the alleged malpractice stems." *Id.* at 115. The circuit court did not err by concluding that any malpractice claim Bret may have had against Fox has expired.

**II.    Whether the circuit court utilized the proper procedure when granting the defendants' motions for summary judgment.**

[¶33.]     Bret also argues that the circuit court erred when it granted summary judgment because in its memorandum decision it identified undisputed material facts that "were new or different facts in whole or part than those timely presented by defendants." According to Bret, summary judgment must be reversed because the court denied him "the opportunity provided by statute to answer, dispute, and

brief the [c]ourt" on these new facts. We disagree. "If there exists any basis which supports the ruling of the [circuit] court, affirmance of a summary judgment is proper." *Klein v. Sanford USD Med. Ctr.*, 2015 S.D. 95, ¶ 20, 872 N.W.2d 802, 808. Here, the court founded its decision on the statute of limitations and concluded that even if Bret once owned a portion of Healy Ranch via his partnership interest, he had notice of the defendants' alleged tortious conduct many years before filing the lawsuit. Because the circuit court properly concluded that Bret's suit was time barred, we affirm summary judgment in favor of the defendants.

### III. Whether the circuit court erred by awarding attorney fees to defendants.

[¶34.] The circuit court has authority to award attorney fees if it finds the lawsuit was frivolous or malicious. "To determine whether sanctions are appropriate . . . it is necessary to determine whether there was a reasonable basis to believe that the facts supporting the claim were true *at the time the lawsuit was filed*." *Johnson*, 2012 S.D. 61 ¶ 14, 818 N.W.2d at 808. "A frivolous action exists when the proponent can present no rational argument based on the evidence or law in support of the claim . . . ." *Ridley v. Lawrence Cty. Comm'n*, 2000 S.D. 143, ¶ 14, 619 N.W.2d 254, 259 (internal quotation marks omitted). Malice, on the other hand,

> exists when the proceedings are instituted primarily for an improper purpose. An improper purpose occurs in situations where[] the plaintiff in the original action was actuated by any unjustifiable motive, . . . [such] as where his primary motive was hostility or ill will, or where his sole purpose was to deprive the defendant of a beneficial use of his property . . . .

*Stratmeyer*, 2002 S.D. 91, ¶ 20, 649 N.W.2d at 926. We review a trial court's ruling on the allowance or disallowance of costs and attorney fees under an abuse of discretion standard." *Stratmeyer v. Engberg*, 2002 S.D. 91, ¶ 12, 649 N.W.2d 921, 925.

[¶35.] Although litigants need only show that a lawsuit was either frivolous *or* malicious to recover attorney fees, the circuit court found that Bret's lawsuit was both. *See Johnson v. Miller*, 2012 S.D. 61, ¶ 8, 818 N.W.2d 804, 807. The circuit court concluded that it was "clear . . . [Bret] brought this action with the intent of trying to prevent the sale of Healy Ranch . . . ." because both Bret and his attorney admitted that was their purpose.

[¶36.] Bret appeals this conclusion, arguing the circuit court abused its discretion. He admits that his motivation for the lawsuit was to prevent Healy Ranch, Inc., from selling the family land. However, he submits that his preventative actions honor the purpose of the 1986 partnership agreement with DeLonde "to preserve the Healy Ranch . . . so that it may be passed on to future generations . . . ." Thus, according to Bret, the circuit court abused its discretion when it found that his claims were frivolous and malicious.

[¶37.] We disagree. Even viewed in the light most favorable to Bret, there is no evidence in the record to suggest that Bret had any reasonable basis to believe his claims were valid when he filed the lawsuit or that they could survive the statute of limitations defenses. To the contrary, Bret's e-mail to Barry in June 2016 demonstrates that he had actual knowledge that Healy Ranch, Inc. held title to Healy Ranch. As soon as Bret began to disagree with his brothers, he made a

conscious effort to maintain his control over the ranch and stop the sale. Bret wrote letters to various banks and journals asserting that the corporation did not have good title, which caused Healy Ranch, Inc. to default on its mortgage. During the short time this litigation was in discovery, Bret sent a total of 2,304 discovery requests to six different defendants. Bret filed the lawsuit for the purpose of preventing the sale of the property, not because he believed his partnership interest remained enforceable. The circuit court did not abuse its discretion by awarding attorney fees to the defendants.

[¶38.] As a final matter, all of the parties request appellate attorney fees, costs, and sales tax. Bryce, Barry, and Healy Ranch, Inc. request $7,759, Mary requests $13,858.33, and Fox requests $3,450. In response, Bret seeks fees totaling $89,127.19. We award $7,500 to Bryce, Barry and Healy Ranch, Inc., $7,500 to Mary, and $3,450 to Fox. Bret's motion for attorney fees is denied. We affirm.

[¶39.] GILBERTSON, Chief Justice, SALTER, Justice, and SOGN, Circuit Court Judge, concur.

[¶40.] SOGN, Circuit Court Judge, sitting for JENSEN, Justice, disqualified.