2003 SD 10

**TRIP–TENN, INC., a South Dakota Corporation, Plaintiff and Appellee,**

v.

**Russell S. SCHULTZ and Sandra S. Schultz, Defendants and Appellants.**

**No. 22205.**

Supreme Court of South Dakota.

Considered on Briefs Aug. 26, 2002.

Decided Jan. 22, 2003.

Frank A. Bettmann of Finch Bettmann Maks, P.C., Rapid City, for plaintiff and appellee.

Robert M. Nash of Wilson, Olson, Nash & Becker, Rapid City, for defendants and appellants.

GILBERTSON, Chief Justice.

[¶ 1.] Trip–Tenn, Inc. sued Russell and Sandra Schultz (collectively Schultz) for reformation of a contract for deed to collect unpaid principal and interest. The parties entered into the contract in 1977. A discrepancy in the amortization schedule was discovered in 1992. Trip–Tenn, however, did not commence suit until 1999, two years after Schultz claims the final payment on the contract was made. The trial court reformed the contract and awarded

Trip–Tenn, Inc., a judgment of $30,955.73. We affirm, concluding the appropriate statute of limitation is the ten-year period found in SDCL 15–2–8(4).

## FACTS AND PROCEDURE

[¶ 2.] On May 20, 1977, the parties entered into a contract for the sale of the "Chief Café" in Custer, South Dakota. The majority of negotiations were done through realtors in Denver, Colorado. Eventually, the parties agreed on a sale price of $300,000 with $50,000 in down payment. Three additional payments of $12,000 each were made on July 1, August 1, and September 1 of that year. The remainder was to be paid in installments of $11,217.88, twice a year, over the twenty-year life of the contract. The final payment was made August 1, 1997.

[¶ 3.] Schultz's payments were made on July 1 and August 1 of each year. The amount of the installments was based on an amortization schedule with a declining balance, at 8.5 percent interest per year. It was discovered, however, that Schultz's installments were calculated using July 1, 1977, as the beginning date for interest accrual. Trip–Tenn's president wrote to Schultz explaining the error and demanding an additional payment for the 8.5 percent interest on the unpaid principal, which had accrued from May 20 to July 1. Schultz promptly tendered a check in the amount of $1,999.42, believing the problem to have been solved.

[¶ 4.] In 1992, however, Trip–Tenn's accountant noted another discrepancy or error in the amount due on the contract, as his calculated amortization schedule did not match the payments being made by Schultz. Trip–Tenn claimed the schedule in use did not account for the proper interest commencement date,[1] the dates and amounts of the payments made in the first year, or the unusual payment schedule of only paying in July and August each year.[2] The accountant contacted Schultz in writing, expressing his concerns. Schultz, however, disagreed with the accountant's assessment and returned an amortization schedule prepared by a bank. While it, too, turned out to be incorrect, the new schedule also indicated a higher payment was required. Trip–Tenn, however, did not file its claim for reformation until December 8, 1999, twenty-two years after the contract was drafted, seven years after the relevant mistake was discovered and two years after the final payment was made.

[¶ 5.] Trip–Tenn sought a declaration from the circuit court that a principal balance, together with the accruing interest, was still owed on the contract. Further, Trip–Tenn sought reformation of the contract "to comply with the intent expressed between the parties in their document." The court concluded that while the contract was not ambiguous, it did not "truly express the intent of the parties in that the actual amount of payments made [did] not satisfy the principal and interest due over the term of years agreed to between the parties." Schultz asserted defenses of estoppel, laches, accord and satisfaction, and statute of limitations. The court held,

---

1. While the problem with the interest commencement date had supposedly been solved by Schultz's additional interest payment, that payment was calculated on $214,000 in principal, not $250,000, which Trip–Tenn now claims was the proper amount.

2. Over the course of the contract, six different amortization schedules were purportedly used

to calculate Schultz's payments. Only the last one, entered into evidence by Trip–Tenn and not seen by Schultz prior to completion of the contract, used $250,000 as the initial interest-bearing principal. The other five all treated the first three $12,000 payments as additional installments on the down payment, thus calculating interest on $214,000.

however, that the insufficient payments were "clearly a mutual mistake of expression" and applied SDCL 21–11–1 to reform the contract. Likewise, the trial court found that the statute of limitations was not a valid defense to Trip–Tenn's cause of action and therefore, rejected Schultz's assertion that the claim was time-barred.

[¶ 6.] Schultz raises the following issues for appeal:

1. Whether Trip–Tenn's cause of action is time-barred.

2. Whether the trial court properly reformed the contract.

### STANDARD OF REVIEW

[¶ 7.] A claim that a cause of action is time-barred is an affirmative defense. *Wolff v. S.D. Game, Fish and Parks Dept.*, 1996 SD 23, ¶ 14, 544 N.W.2d 531, 533–34 (holding filing outside the statutory period must be "established as a matter of uncontroverted fact."). Therefore, the burden is on Schultz to show that Trip–Tenn's cause of action accrued more than six years (if applying SDCL 15–2–13) or twenty years (if applying SDCL 15–2–6), or ten years (if applying SDCL 15–2–8(4)) before the December 8, 1999 filing date. *Wolff*, 1996 SD 23, ¶ 14, 544 N.W.2d at 533–34. As in this case there is no question of material fact, the issue of which statute of limitations applies is one of statutory interpretation, which is reviewed *de novo*. *Faircloth v. Raven Industries, Inc.*, 2000 SD 158, ¶ 4, 620 N.W.2d 198, 200 (citations omitted).

[¶ 8.] "We review a trial court's grant or denial of reformation under an abuse of discretion standard." *LPN Trust v. Farrar Outdoor Advertising*, 1996 SD

97, ¶ 13, 552 N.W.2d 796, 799 (citing *Knudsen v. Jensen*, 521 N.W.2d 415, 420 (S.D. 1994)). "In granting the reformation, the court merely revises the writing to express their prior agreement." *Id.* (citing *Burke v. Bubbers*, 342 N.W.2d 18, 20 (S.D.1984)) (additional citations omitted).

### ANALYSIS AND DECISION

[¶ 9.] **1. Whether Trip–Tenn's cause of action is time-barred.**

[¶ 10.] The trial court correctly concluded that *Burke*, 342 N.W.2d at 20, requires application of the ten-year statute of limitations to this action to reform a contract. In *Burke*, this Court held that the ten-year statute (SDCL 15–2–8(4)) for "action[s] for relief not otherwise provided for" applied to an action to reform a deed. *Burke*, 342 N.W.2d at 20. This Court arrived at that conclusion because: (1) equitable actions for reformation are not considered *actions upon* the underlying deed, rather they are *actions for reformation of* the instrument; and, (2) South Dakota has no specific statute of limitations for reformation actions.[3] Therefore, in the absence of a statute for equitable reformation, this Court applied the ten-year limitation for causes of action "not otherwise provided for." *Id.* That same conclusion is applicable here because this is not an action for relief *upon the contract*. Rather, this is an action *for reformation of* that instrument.

[¶ 11.] *Burke* is analogous because, for statute of limitation purposes, there is no legal distinction between an action to reform a contract and an action to reform a deed arising from a contract. In both cases the proceeding is not an action at law brought *upon* the contract or

---

**3.** *Burke* also declined to apply the "fraud or mistake" statute of limitations sometimes used in other jurisdictions for reformation actions. *Burke* concluded that South Dakota's version of that statute is inapplicable because it (SDCL 15–2–13(6)) does not contemplate actions which are only based on mistake. *Id.*

the deed for its enforcement. Rather, both actions seek the equitable remedy of *reformation of the* contract or deed. *Langer v. Stegerwald Lumber Co.*, 262 Wis. 383, 55 N.W.2d 389, 393 (1953).

[¶ 12.] Therefore, because *Burke* applied the ten-year statute to actions for the reformation of deeds, the same statute should apply to actions for reformation of a contract for a deed. The Wisconsin Supreme Court applied this exact analogy. That court held that Wisconsin's general statute of limitations for equitable actions applied to an action for reformation of a contract to purchase real estate, rather than a statute of limitations for actions *upon* a contract. The Wisconsin Supreme Court ruled: "by analogy, if the [general equitable] statute applies to the reformation of a deed, it ought to also apply to the reformation of a contract for sale of land." *Langer*, 262 Wis. 383, 55 N.W.2d 389, 393.

[¶ 13.] That analysis is applicable here. By analogy, if the *Burke* ten-year statute of limitations in SDCL 15–2–8(4) applies to reformations of deeds, it also applies to the reformation of the contract for the sale of Trip–Tenn's property. Under that ten-year statute, Trip–Tenn's 1999 action for reformation was timely, whether it accrued upon the first discovery of the mistake in 1992, or upon Schultz's assertion of his adverse claim in 1998.

[¶ 14.] **2. Whether the trial court properly reformed the contract.**

[¶ 15.] Having determined that Trip–Tenn's cause of action is not time-barred, we now turn to the issue of whether the trial court abused its discretion when it reformed the contract under SDCL 21–11–1. This statute provides:

When through fraud or mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a written contract does not

truly express the intention of the parties, it may be revised on the application of a party aggrieved so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value.

[¶ 16.] Schultz argues that there is no showing of mutual mistake and therefore, reformation of the contract was not appropriate. Additionally, Schultz contends that reformation was not proper because Trip–Tenn did not bring this cause of action until after all payments were accepted.

[¶ 17.] We find *Garber v. Haskins* to be controlling to the instant case. 84 S.D. 459, 172 N.W.2d 721 (1969). In *Garber*, this Court allowed reformation of a contract based on erroneous amortization calculations. 84 S.D. at 464, 172 N.W.2d at 723. After a review of the record, we find that there was ample evidence at trial to support the trial court's decision to reform the contract. Both Schultz and Trip–Tenn were well aware that there were mistaken figures in the amortization table essentially from the beginning of the contract. Therefore, the contract did not "truly express the intentions of the parties." As we stated in *Garber*, "The determination of these amounts was only a matter or arithmetic computation from the essential terms of the bargain on which they agreed." *Id.* That same conclusion applies here. We, therefore, affirm.

[¶ 18.] SABERS, KONENKAMP, and ZINTER, Justices, and AMUNDSON, Retired Justice, concur.

[¶ 19.] MEIERHENRY, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.