#27209-a-DG
**2015 S.D. 42**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

BLAIR GADES and LYNN GADES,  Plaintiffs and Appellants,

v.

MEYER MODERNIZING CO., INC.,  Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
DAVISON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE TIMOTHY W. BJORKMAN
Judge

\* \* \* \*

JAMES D. TAYLOR of
James D. Taylor, PC
Mitchell, South Dakota          Attorneys for plaintiffs and
                                appellants.


MATTHEW D. MURPHY
ROGER A. SUDBECK of
Boyce, Greenfield, Pashby &
  Welk, LLP
Sioux Falls, South Dakota       Attorneys for defendant and
                                appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MARCH 23, 2015
OPINION FILED **06/03/15**

#27209

GILBERTSON, Chief Justice

[¶1.]        Blair and Lynn Gades appeal the circuit court's determination that their cause of action was time barred, as well as the court's order granting summary judgment in favor of Meyer Modernizing Co., Inc. (Meyer). The Gadeses assert there are genuine disputes of material fact as to the date of accrual of their cause of action. They also assert Meyer concealed the existence of their cause of action. We affirm.

## Facts and Procedural History

[¶2.]        The facts of this case are largely undisputed.[1] In 2000, the Gadeses engaged Enercept, Inc.—a manufacturing company located in Watertown, South Dakota—to design and manufacture the structural insulated panels[2] used to construct their home in Mitchell, South Dakota. The Gadeses did not hire a general contractor to oversee the actual construction of their home; instead, Blair Gades assumed that role himself. In early 2000, the Gadeses hired Master Builders of Avon—a Minnesota entity—to install the footings, erect the Enercept panels, finish and shingle the roof, install the windows and doors, and apply the house wrap.

---

1.      Meyer submitted a statement of material facts in compliance with SDCL 15-6-56(c)(1). Of Meyer's 17 separate factual assertions, the Gadeses controverted only one.

2.      A structural insulated panel (SIP) system is an alternative building technique to a traditional "stick-framed" structure. A SIP is a composite building material that usually consists of a rigid insulation core, such as polystyrene foam, laminated between two layers of engineered wood particle board. SIPs are premanufactured and then shipped to the construction site for assembly.

[¶3.]        On April 3, 2000, the Gadeses hired Meyer to install the siding, soffits, and gutters on the home. The estimate offered by Meyer and accepted by the Gadeses did not mention, or include charges for, the installation of flashing around the windows and doors.[3] By the time Meyer installed the siding, Master Builders had already installed all of the windows, doors, and house wrap. The home was substantially completed, and the Gadeses moved into the home, by late 2000.

[¶4.]        As early as spring 2001, but no later than 2002, the Gadeses first noticed water infiltration around window and door openings during rain and wind events.[4] This water infiltration resulted in standing water on the window sills and seepage into the door trim and floors. Similar instances of water infiltration have occurred every year since the Gadeses moved into their home, with some years seeing as many as 10 to 12 such incidents. The totality of the Gadeses' asserted injury in this case stems from these water infiltrations, the natures of which have not changed since first manifesting. Since first becoming aware of the problem, the Gadeses have not performed any corrective work on the home.[5]

---

3.      In its statement of material facts, Meyer asserted, "Defendant did not agree to install and the contract did not include any charge for flashing around the home's windows and doors." While the Gadeses agree the estimate did not mention the installation of flashing around the windows and doors, they nevertheless dispute the conclusion that Meyer did not agree to install such flashing.

4.      The Gadeses admit Blair Gades first noticed water infiltration in 2001. They also admit Lynn Gades first noticed water infiltration "in 2001 or 2002 at the latest."

5.      Despite failing to controvert Meyer's statement that no repair work has taken place since 2001, the Gadeses' brief to this Court claims Meyer returned to the home in 2004 or 2005 and "reworked substantial portions of the siding, in

(continued . . .)

[¶5.] The Gadeses retained counsel in this matter by April 11, 2005. However, they did not bring suit regarding their water infiltration claim until April 2010. They amended their complaint in 2013 to include the assertion that Meyer concealed the absence of installed flashing. Meyer moved for summary judgment, which the circuit court granted.

[¶6.] The Gadeses raise one issue on appeal: Whether there is a genuine dispute of material fact as to the date of accrual of their cause of action.

## Standard of Review

[¶7.] "In reviewing a grant or a denial of summary judgment under SDCL 15-6-56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law." *Peters v. Great W. Bank, Inc.*, 2015 S.D. 4, ¶ 5, 859 N.W.2d 618, 621 (quoting *Saathoff v. Kuhlman*, 2009 S.D. 17, ¶ 11, 763 N.W.2d 800, 804). If the moving party properly supports the motion, the nonmoving party may only avoid summary judgment by "set[ting] forth specific facts showing that there is a genuine issue for trial." SDCL 15-6-56(e). Any material fact asserted by the moving party in support of the motion for summary judgment is deemed admitted by the nonmoving party unless controverted. SDCL 15-6-56(c)(3). We view the

---

(. . . continued)
response to Gades' [sic] complaints about water penetration." However, this account is further contradicted by Blair Gades's 2014 deposition, in which Meyer's counsel asked him, "I mean, there's been some investigation, but there hasn't actually been any reflashing or flashing that's been done or caulking or anything like that." Gades responded, "No." According to Meyer, it sent an employee to inspect the Gadeses' home in 2004 or 2005, but the employee merely removed a small portion of siding and determined the water infiltration was not occurring as a result of any of Meyer's work.

evidence "most favorably to the nonmoving party and [resolve] reasonable doubts . . . against the moving party." *Peters*, 2015 S.D. 4, ¶ 5, 859 N.W.2d at 621 (quoting *Saathoff*, 2009 S.D. 17, ¶ 11, 763 N.W.2d at 804). "If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper." *Id.* (quoting *Saathoff*, 2009 S.D. 17, ¶ 11, 763 N.W.2d at 804).

### Analysis and Decision

[¶8.]        There does not appear to be a genuine dispute as to the applicable period of limitation in this case.[6] SDCL 15-2-13(1) provides that "[a]n action upon a contract, obligation, or liability, express or implied," may only be filed "within six years after the cause of action shall have accrued[.]" The Gadeses assert there are genuine issues of material fact as to the beginning of this six-year period. First, the Gadeses assert Meyer knew flashing had not been installed and that "Meyer actively concealed the lack of flashing[.]" The Gadeses allege Meyer maintained this concealment "at least from 2004 or 2005 when it undertook additional work if

---

6.      The Gadeses argued to the circuit court that their action was timely based on the ten-year period of repose established in SDCL 15-2A-3. In their brief to this Court, the Gadeses again assert, if only in passing, that "they commenced their action well within the time allowed for actions for construction deficiencies." It is unclear whether the Gadeses intend this mention to be an affirmative assertion that their claim is timely, or if it was offered merely in anticipation of an argument from Meyer regarding the ten-year period of repose. Regardless, a period of repose "is not designed to allow a reasonable time for the filing of an action once it arises." *Peterson ex rel. Peterson v. Burns*, 2001 S.D. 126, ¶ 41, 635 N.W.2d 556, 570 (quoting *Zacher v. Budd Co.*, 396 N.W.2d 122, 129 n.5 (S.D. 1986)). Thus, SDCL 15-2A-3 does not operate to extend the time for filing an action otherwise barred by the running of the applicable period of limitation. *Id.* (quoting *Zacher*, 396 N.W.2d at 129 n.5).

not from initial installation." Finally, the Gadeses assert they were not "actually aware of the lack of flashing" until October 2013.

[¶9.] As indicated in the previous paragraph, the Gadeses were permitted to file their cause of action within six years of its accrual. SDCL 15-2-13(1). The Gadeses assert they were not "actually aware of the lack of flashing" until October 2013. "A claim accrues when a plaintiff has actual *or* constructive notice of a cause of action." *E. Side Lutheran Church of Sioux Falls v. NEXT, Inc.*, 2014 S.D. 59, ¶ 10, 852 N.W.2d 434, 438 (emphasis added).[7] Because "[e]very person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself[,]" SDCL 17-1-4, "[a] claim can accrue 'even when one may not yet know all the underlying facts or the full extent of damages[,]'" *E. Side Lutheran Church*, 2014 S.D. 59, ¶ 14, 852 N.W.2d at 439-40 (quoting *Strassburg v. Citizens State Bank*, 1998 S.D. 72, ¶ 13, 581 N.W.2d 510, 515). Thus, "[s]tatutes of limitations begin to run when plaintiffs first become aware of facts prompting a reasonably prudent person to seek information about the

---

7. The Gadeses' assertion that they were not aware of the absence of flashing until October 2013 is contradicted by their and their attorney's prior statements. In their complaint, dated April 16, 2010, the Gadeses asserted the following: "The seamless metal siding was installed improperly as related to penetrations through the siding envelope lacking, at least, *proper flashing around windows, doors, and other exterior penetrations* and other unknown deficiencies allowing water to enter the interior of Plaintiffs' personal residence." (Emphasis added.) The Gadeses' assertion is further contradicted by a letter their attorney sent to Meyer on April 11, 2005, which states: "The combination of improperly installed and wrongly sized siding to window trim, *and the apparent omission of any flashing*, results in rain and water entering the exterior walls at the joint between the windows and the siding." (Emphasis added.)

problem and its cause." *Id.* ¶ 14, 852 N.W.2d at 440 (quoting *Strassburg*, 1998 S.D. 72, ¶ 13, 581 N.W.2d at 515) (internal quotation marks omitted).

[¶10.]     The Gadeses were aware of facts sufficient for their cause of action to accrue by at least spring 2002. By virtue of not controverting Meyer's statement of undisputed material facts, if nothing else, the Gadeses admitted the following: Blair Gades became aware of water infiltration in 2001, Lynn Gades was aware of water infiltration no later than 2002, and the water infiltration has recurred every year since they moved into their home. These admissions make this case nearly identical to the relevant facts of *East Side Lutheran Church*. There, the plaintiff became aware of water infiltration problems within months of the substantial completion of a new addition to its church, but failed to file suit within six years of its discovery of the water infiltration. *E. Side Lutheran Church*, 2014 S.D. 59, ¶¶ 2-6, 852 N.W.2d at 436-37. "It [was] undisputed [the plaintiff] knew water infiltration existed throughout the building almost immediately after construction was completed . . . ." *Id.* ¶ 12, 852 N.W.2d at 439. Thus, like the present case, there was no genuine issue of material fact as to whether the plaintiffs had actual notice of water infiltration prior to six years before the commencement of their action. *Id.* We held, as we hold in the present case, "Because [the plaintiff's] actual notice of the water infiltration gave rise to a situation where [the plaintiff] could have filed suit and sought relief, any claim with a sufficient relationship to the water infiltration . . . accrued and statutorily lapsed prior to [the plaintiff's] . . . lawsuit." *Id.*

[¶11.]     Despite the foregoing, the Gadeses argue *East Side Lutheran Church* supports their assertion that there is a genuine dispute of material fact as to when

their cause of action accrued. Specifically, they quote the following language from *East Side Lutheran Church*: "Because what a reasonably prudent person should inquire into when learning of water infiltration can differ depending on the circumstances, we conclude there is a genuine issue of material fact as to when East Side's structural design error and construction error claims accrued." *Id.* ¶ 15, 852 N.W.2d at 440. According to the Gadeses, "this is precisely the issue in this instance." The Gadeses misapprehend this quoted portion of *East Side Lutheran Church*. We used the terms *structural design error* and *construction error* to designate claims potentially distinguishable from the plaintiff's *water infiltration* claim. *Id.* ¶ 13, 852 N.W.2d at 439. At that point in the opinion—three paragraphs after we had already plainly stated the plaintiff's water infiltration claim had accrued prior to six years before the plaintiff commenced its action—we discussed whether the plaintiff's actual notice of water infiltration also served as notice of possible design and construction defects. *Id.* ¶¶ 12-16, 852 N.W.2d at 439-41. In the present case, and in contrast to the plaintiff in *East Side Lutheran Church*, the Gadeses admit the entirety of their claim relates to the asserted water infiltration. Therefore, based on the Gadeses' admissions alone, there can be little argument that their cause of action accrued in 2002, regardless of when they "actually" became aware of the absence of flashing.

[¶12.]     Next, the Gadeses assert that Meyer did not disclose its knowledge that no flashing had been installed on their home and that, instead, Meyer insisted

that the installed "J-Channel" was sufficient.[8]  Therefore, they conclude, the statute of limitations should be tolled.  "[F]raudulent concealment applies . . . when actionable conduct or injury has been concealed by deceptive act or artifice." *Strassburg*, 1998 S.D. 72, ¶ 14, 581 N.W.2d at 515.  In the absence of "a confidential or fiduciary relationship," a plaintiff alleging fraudulent concealment must allege "some affirmative act or conduct on the part of the defendant designed to prevent, and which does prevent, the discovery of the cause of action." *Id.* (quoting *Koenig v. Lambert*, 527 N.W.2d 903, 905-06 (S.D. 1995), *overruled on other grounds*, *Stratmeyer v. Stratmeyer*, 1997 S.D. 97, 567 N.W.2d 220) (internal quotation marks omitted).  Here, the Gadeses do not claim, and the record does not suggest, a relationship of trust or confidence between the Gadeses and Meyer.  "Fiduciary duties . . . are not inherent in normal arm's-length business relationship[s] and arise only when one undertakes to act primarily for another's benefit." *Cleveland v. BDL Enters., Inc.*, 2003 S.D. 54, ¶ 18, 663 N.W.2d 212, 218 (quoting *Schwaiger v. Mitchell Radiology*, 2002 S.D. 97, ¶ 19, 652 N.W.2d 372, 380) (internal quotation marks omitted).[9]  Therefore, the Gadeses are required to prove some affirmative act on Meyer's part, that Meyer designed such act to prevent the Gadeses from detecting their cause of action, and that they were actually prevented from discovering their cause of action.

---

8.    "J-Channel" is the name given to the material used to bind the siding Meyer installed to openings such as windows and doors.

9.    The existence and scope of a fiduciary duty is a question of law. *Cleveland*, 2003 S.D. 54, ¶ 18, 663 N.W.2d at 218.

[¶13.] A detailed discussion of the Gadeses' fraudulent concealment argument is not necessary, however, as it fails on the very same facts that establish the accrual of their cause of action: their actual knowledge of the water infiltration dating from at least 2002. Even if Meyer had somehow fraudulently concealed the absence of flashing, "[f]raudulent concealment will not toll the statute of limitations, no matter the nature of the concealment, if a plaintiff is already on notice of a cause of action." *Strassburg*, 1998 S.D. 72, ¶ 15, 581 N.W.2d at 516. Similarly, establishing fraudulent concealment will not toll the period of limitation beyond the moment "the claim is discovered or might have been discovered with reasonable diligence." *Id.* ¶ 14, 581 N.W.2d at 515. As we have already discussed, the Gadeses were put on notice of their cause of action by repeated and obvious water infiltrations occurring year after year since they first occupied their home. It would have been exceedingly difficult, if not impossible, for Meyer to conceal the water infiltration from the Gadeses.[10] As the circuit court correctly noted, "Defendant had no ability to keep Plaintiffs from discovering the facts constituting their claim."

## Conclusion

[¶14.] "The right to be free of stale claims in time comes to prevail over the right to prosecute them." *Id.* ¶ 8, 581 N.W.2d at 514 (quoting *United States v. Kubrick*, 444 U.S. 111, 117, 100 S. Ct. 352, 357, 62 L. Ed. 2d 259 (1979)). By their

---

10. Lynn Gades admitted watching water run down a fabric shade and accumulating on a window sill during the first water intrusion. The Gadeses have not suggested that Meyer had any means of concealing such manifestations of water infiltration inside the home.

own admissions, the Gadeses were well aware of the repeated water infiltrations into their home beginning in 2001 or 2002, and the entirety of their claim relates to those water infiltrations. Any alleged concealment on Meyer's part, even if proved at trial, would not change the fact that the Gadeses had notice of their cause of action by 2002. Thus, the Gadeses' cause of action accrued in 2002, if not before, and they have offered no reason why the period of limitation should be tolled. The law does not permit the Gadeses to sit on an accrued cause of action for eight years and still prosecute their claim. We affirm.

[¶15.]     ZINTER, SEVERSON, WILBUR and KERN, Justices, concur.