#30004, #30005-aff in pt & rev in pt-PJD
**2023 S.D. 33**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

#30004

MICHAEL HOVEN and
MADELYNN HOVEN,                                    Plaintiffs and Appellees,

    v.

BANNER ASSOCIATES, INC.,                           Defendant and Appellant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

#30005

MICHAEL HOVEN and
MADELYNN HOVEN,                                    Plaintiffs and Appellants,

    v.

BANNER ASSOCIATES, INC.,                           Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
DAY COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JON S. FLEMMER
Judge

* * * *

ARGUED
JANUARY 11, 2023
OPINION FILED **07/12/23**

\* \* \* \*

GREGORY H. WHEELER of
Boyce Law Firm
Sioux Falls, South Dakota

Attorneys for Banner
Associates, Inc.


STEVEN J. OBERG of
Lynn, Jackson, Shultz
    & Lebrun, P.C.
Sioux Falls, South Dakota

Attorneys for Michael Hoven
and Madelynn Hoven.

#30004, #30005

DEVANEY, Justice

[¶1.]        Michael and Madelynn Hoven and Banner Associates, Inc. filed

separate petitions for discretionary appeal related to the circuit court's summary

judgment rulings in the Hovens' professional negligence suit against Banner, which

we granted.  Banner asserts the circuit court erred in concluding that the six-year

statute of limitations in SDCL 15-2-13(1) did not apply to bar the Hovens' lawsuit

and that only the ten-year statute of repose in SDCL 15-2A-3 applied.  It further

claims the court erred by finding that disputed material facts precluded summary

judgment on the question whether the Hovens' suit is barred by the application of

SDCL 15-2A-3.  Banner asks this Court to conclude as a matter of law that the

limitation periods in both statutes have expired.  The Hovens assert the circuit

court erred in granting Banner's motion for summary judgment on the question

whether fraudulent concealment tolled the applicable limitation period.  We

consolidate the appeals and remand for the circuit court to dismiss the suit as

untimely under SDCL 15-2-13(1).

## Factual and Procedural Background

[¶2.]        In 2006, Dennis and Carol Gregerson planned to subdivide their

property at Blue Dog Lake near the City of Waubay in Day County and hired

Banner to provide professional surveying and engineering services related to this

property.  The City's applicable ordinances required that all new residential

construction meet or exceed a base flood elevation (BFE) as determined by the

Federal Emergency Management Agency's (FEMA) flood insurance rate map

(FIRM).  At the time, FEMA required that the BFE be determined using the

-1-

National Geodetic Vertical Datum of 1929 (NGVD 1929). A vertical datum is a fixed reference surface from which the heights of various points are determined.[1]

[¶3.] As part of its professional services for the Gregersons, Banner determined a benchmark elevation on the Gregersons' property and set an iron pin at the benchmark's location. A benchmark is an identifiable, stable point for which there is a known elevation.[2] Banner also prepared an elevation certificate for the Gregersons' house and provided it to the City. In the certificate, Banner noted that it surveyed the elevation using the North American Vertical Datum of 1988 (NAVD 1988), and because FEMA required the use of the NGVD 1929 datum, Banner included a conversion of its surveyed elevation from the NAVD 1988 datum to the NGVD 1929 datum.

[¶4.] In 2007, the Hovens learned that the Gregersons were interested in subdividing their property. The Hovens lived in Iowa, but they frequented the Waubay area for recreational fishing and hunting and wanted to build a lake home. Michael testified in his deposition that the lot they ultimately purchased from the Gregersons in 2007 was a reconfiguration of two or more of the original lots surveyed by Banner. He further testified that he believed he and his wife shared in the cost of re-surveying the lots with the Gregersons.

---

1. National Geodetic Survey, *Datums and References Frames*, https://www.ngs.noaa.gov/datums/index.shtml (last visited July 5, 2023); National Geodetic Survey, *Vertical Datums*, https://geodesy.noaa.gov/datums/vertical/index.shtml (last visited July 5, 2023).

2. National Geodetic Survey, *FAQs*, https://www.ngs.noaa.gov/datasheets/SurveyMarks_FAQ.shtml (last visited July 10, 2023).

[¶5.] After the Hovens closed on the purchase of the property, they began construction of their house. Michael, a construction foreman, testified that they planned to complete the majority of the construction on their own as time and money would allow, without outside financing, while they continued to live in Iowa. When asked whether he used a professional surveying company to lay the perimeter of his house, Michael testified that he did not. Rather, he staked the house himself. He further testified that he estimated the depth to pour the footings based on his observation of the frost line and his belief that it would be safe to pour the footings five or six feet below the virgin ground.

[¶6.] Michael testified that after he poured the footings, the next phase of construction entailed pouring the walls. He testified that he was aware that the City's ordinances required the elevation of the base floor to be 1810 feet for new residential construction. He claimed that in light of this requirement, he contacted Banner to establish a benchmark on his property from which he could calculate the necessary height for the walls and then determine the floor height. Michael spoke with Steven Rames, then-employee of Banner, and claimed that he specifically told Rames that the purpose of the survey was to ensure the floor would be constructed to meet or exceed the City's BFE requirement. Michael further claimed that Rames expressed his understanding of this request.

[¶7.] In his deposition, Rames did not dispute that he spoke to Michael in 2006 or 2007. However, he testified that the Hovens did not officially retain Banner to complete a survey in 2006 or 2007. Rather, according to Rames, Michael simply asked him to mark the elevation of a benchmark that was already located on the

Hovens' property from Banner's previous survey work done for the Gregersons. Rames testified that in response to Michael's request, he sent a surveyor to mark the elevation of the benchmark (an iron pin). An elevation of 1806.96 was written on a lath placed next to the pin. On September 9, 2007, Rames sent Michael a document, titled "Mike Hove[n] Bench Mark," that showed the property lines for the subdivided Gregerson property and the location of a benchmark with the reference "BM =1806.96." The document contained the following handwritten message: "Mike, This is what I have." The document also included Rames's signature and a stamp of Rames's professional engineering seal.

[¶8.] In response to Rames's characterization of what occurred with respect to the elevation provided by Banner, Michael testified that he had no knowledge of an existing benchmark pin on his property. Michael further testified that he was out of town for work when the elevation was marked on the lath and placed next to the pin and when Rames sent the letter identifying the benchmark elevation. He was also out of town when his concrete contractor poured the walls. When asked how the contractor determined the amount of concrete to pour, Michael testified that he and the contractor calculated the height to which the concrete needed to be poured based on an elevation number that Michael believed his contractor obtained from the lath. Michael claimed that he told the contractor to add two additional inches to make sure the base floor would meet the City's BFE requirements.

[¶9.] From 2007 to 2009, the Hovens continued to work on the construction of their lake house. Michael testified that by the end of 2007, the house had been

"roughed-in" and was enclosed but it had not yet been sided, insulated, wired, or heated and the interior walls were not yet framed.

[¶10.] In 2009, the Hovens hired Banner to survey the elevation of their house, and in January 2010, Rames sent a letter to the Hovens indicating that Banner "shot the first floor of the house/structure" on February 2, 2009 at "1810.19 in the Datum of NAVD88." According to Michael, this was the first time Banner referred to a "datum." He further testified that he did not know about the differences between datums and as a result did not ask Banner about them.

[¶11.] Sometime in 2010, Madelynn learned that they needed an Elevation Certificate to purchase flood insurance and requested such a certificate from Banner. In response, Kent Johnson from Banner asked Madelynn to provide him with certain measurements from the house, including measurements related to the crawl space. In May 2010, after Madelynn relayed the necessary information, Johnson provided the Hovens an Elevation Certificate, and they used it to obtain flood insurance in 2010 without issue.

[¶12.] The Hovens did not renew their insurance the next year and did not again seek flood insurance until 2019, when according to Michael, the lake levels were high because the area had experienced heavy winter storms. With their 2019 application for flood insurance, the Hovens included the 2010 Elevation Certificate. This time, however, FEMA informed the Hovens that the elevation of their base floor did not meet the minimum elevation requirement, and as such, their insurance premium would be approximately twice the sum they had previously paid. According to the Hovens, this is when they were informed that the stated floor

elevation in the certificate was in the NAVD 1988 datum, and after converting the elevation to the NGVD 1929 datum used by FEMA, the elevation did not meet the BFE of 1810 feet.

[¶13.]    In July 2019, the Hovens brought suit against Banner, alleging professional negligence related to establishing the benchmark for the construction of their lake house.  They further claimed that Banner knew as early as 2010 that it had used a different vertical datum than the one used by FEMA and thereafter "withheld information regarding its error, mistake, misapplication, and misuse of the 1988 NAVD from" them.

[¶14.]    In its answer, Banner asserted as an affirmative defense that the Hovens' claims are barred by the expiration of the statute of limitations and the statute of repose.  It thereafter filed a motion for summary judgment asserting the same defenses.  Banner claimed that the Hovens were required under SDCL 15-2A-3 to bring their suit by 2017 because the Hovens' house was substantially completed in 2007 and the statute bars claims for relief "arising out of any deficiency in the design, planning, . . . of construction, or construction, of an improvement to real property" brought "more than ten years after substantial completion of such construction."  Banner acknowledged the exception in SDCL 15-2A-7 to the application of the ten-year limitation period in cases where there was fraudulent concealment; however, it claimed that the undisputed material facts established it did not engage in any affirmative acts designed to conceal facts about the elevation benchmark it established in 2006 and provided to the Hovens in 2007.

[¶15.] Banner also asserted that any claims related to its 2006 or 2007 work, its 2009 work, and the Elevation Certificate it provided to the Hovens in 2010 were barred by the six-year statute of limitations in SDCL 15-2-13(1) because the Hovens possessed all the facts and information necessary in 2010 to know of any claimed deficiencies in Banner's work. Banner further asserted that there are no facts in dispute that would support tolling the statute of limitations in SDCL 15-2-13(1) because there is no evidence that Banner acted affirmatively to prevent the Hovens from discovering their cause of action.

[¶16.] In response, the Hovens asserted that their lawsuit was timely brought in 2019 under SDCL 15-2A-3 because the undisputed evidence established that their house was not substantially complete before 2013. They alternatively asserted that material issues of fact were in dispute on the question whether fraudulent concealment applies under SDCL 15-2A-7 to toll the ten-year period in SDCL 15-2A-3. Finally, the Hovens argued that their cause of action was not barred under SDCL 15-2-13(1) because they had no reason to question the propriety of the elevations provided to them by Banner until they were informed by FEMA in 2019 that the base floor elevation of their home did not meet the minimum elevation requirement. Alternatively, they contended that even if their claim would have otherwise accrued in 2010, the limitation period was tolled because of Banner's fraudulent concealment.

[¶17.] After a hearing, the circuit court found SDCL 15-2A-3 to be the only applicable limitation period and denied Banner's motion for summary judgment, determining that material issues of fact were in dispute on the question whether

the Hovens' home was substantially completed more than ten years before they brought suit. However, the circuit court found no material issues of fact in dispute on the Hovens' "claims of fraudulent concealment" and granted Banner's motion for summary judgment in this regard. The circuit court did not examine whether factual issues were in dispute related to the statute of limitations in SDCL 15-2-13(1) because the court determined that the statute did not apply. In so ruling, the circuit court relied on the language setting forth an exception to the six-year limitation period under SDCL 15-2-13 when *"a different limitation is prescribed by statute"* and determined that SDCL 15-2A-3 is the only limitation period that applies because this statute "specifically covers the design and planning and supervision and inspection of construction[.]" (Emphasis added.)

[¶18.] The Hovens and Banner separately petitioned this Court pursuant to SDCL 15-26A-13 for a discretionary appeal of the circuit court's order, and we granted both petitions. Banner asserts that the court erred in concluding that only the limitation period in SDCL 15-2A-3 applied to the Hovens' claims and further contends that the undisputed material facts establish that the Hovens' claims are barred under both SDCL 15-2-13 and SDCL 15-2A-3. Banner thus contends it is entitled to summary judgment in all respects. The Hovens assert the court erred in concluding that no material issues of fact were in dispute on the question of Banner's fraudulent concealment.

## Standard of Review

[¶19.] We review de novo a circuit court's decision to grant or deny summary judgment. *Althoff v. Pro-Tec Roofing, Inc.*, 2022 S.D. 49, ¶ 11, 979 N.W.2d 148, 152.

> Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." SDCL 15-6-56(c). We view the evidence and all reasonable inferences in a light most favorable to the nonmoving party and resolve reasonable doubts against the moving party. *Strassburg v. Citizens State Bank*, 1998 S.D. 72, ¶ 5, 581 N.W.2d 510, 513. Our task on appeal is to "determine whether the moving party has demonstrated the absence of any genuine issue of material fact and entitlement to judgment on the merits as a matter of law." *Bernie v. Cath. Diocese of Sioux Falls*, 2012 S.D. 63, ¶ 7, 821 N.W.2d 232, 237 (citation omitted).

*Id.* (quoting *Syrstad v. Syrstad*, 2021 S.D. 67, ¶ 13, 968 N.W.2d 207, 212).

## Analysis and Decision

### 1.    *Whether both SDCL 15-2-13 and SDCL 15-2A-3 apply to the Hovens' lawsuit against Banner.*

[¶20.]    Banner contends that the circuit court erred in concluding that SDCL 15-2A-3 is the only limitation period applicable to the Hovens' lawsuit. In its view, both SDCL 15-2-13 and SDCL 15-2A-3 could apply depending on the circumstances. More specifically, Banner asserts that SDCL 15-2A-3 is a statute of *repose* that sets the "outside time when claims related to the design and construction of improvements to real property are barred as a matter of law" regardless of whether the claim has accrued, while SDCL 15-2-13 is a statute of *limitations* that sets the time for bringing suit when a claim has accrued. As support, Banner notes that SDCL 15-2-13 has been applied in other construction cases. *See Gades v. Meyer Modernizing Co., Inc.*, 2015 S.D. 42, 865 N.W.2d 155; *East Side Lutheran Church of Sioux Falls v. NEXT, Inc.*, 2014 S.D. 59, 852 N.W.2d 434. Banner further directs this Court to *McMacken v. State*, in which we explained that the predecessor to

-9-

SDCL 15-2A-3 works in conjunction with other applicable limitation periods. *See* 320 N.W.2d 131, 139 (S.D. 1982), *overruled on other grounds by Daugaard v. Baltic Co-op Bldg. Supply Ass'n*, 349 N.W.2d 419 (S.D. 1984).[3]

[¶21.]    In their appellate brief, the Hovens claim that the answer to the question whether the two statutes are mutually exclusive "may not be as clear as Banner suggests." However, during oral argument, counsel for the Hovens agreed that SDCL 15-2A-3 and SDCL 15-2-13 are not mutually exclusive and instead work in tandem.

[¶22.]    "Questions of statutory interpretation and application are reviewed under the de novo standard of review with no deference to the circuit court's decision." *Farmer v. Farmer*, 2022 S.D. 47, ¶ 34, 979 N.W.2d 173, 183 (quoting *McKie Ford Lincoln, Inc. v. Hanna*, 2018 S.D. 14, ¶ 10, 907 N.W.2d 795, 798). Similarly, questions concerning the applicability of a limitation period to a particular claim is reviewed de novo. *Trip-Tenn, Inc. v. Schultz*, 2003 S.D. 10, ¶ 7, 656 N.W.2d 747, 750.

---

3.    *McMacken* involved a constitutional challenge to SDCL 15-2-9 based on numerous grounds, all of which were rejected by this Court. 320 N.W.2d at 133. However, two years later, the Court overruled *McMacken* and declared SDCL 15-2-9 unconstitutional because it violated the "open courts" provision in the South Dakota Constitution and denied plaintiffs due process. *Daugaard*, 349 N.W.2d at 427. In response, the Legislature enacted SDCL chapter 15-2A. Then in 2003, the constitutionality of the statute was again under attack. *See Cleveland v. BDL Enter., Inc.*, 2003 S.D. 54, ¶¶ 45–46, 663 N.W.2d 212, 224. The Court in *Cleveland* determined that the holding in *Daugaard* could "no longer be supported as a correct interpretation" of South Dakota's open courts provision and upheld SDCL 15-2A-3 as constitutional. 2003 S.D. 54, ¶¶ 45–46, 663 N.W.2d at 224.

[¶23.] SDCL 15-2A-3 provides:

> No action to recover damages for any injury to real or personal property, for personal injury or death arising out of any deficiency in the design, planning, supervision, inspection, and observation of construction, or construction, of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury or death, may be brought against any person performing or furnishing the design, planning, supervision, inspection, and observation of construction, or construction, of such an improvement more than ten years after substantial completion of such construction.

[¶24.] In our past cases, we have referred to SDCL 15-2A-3 and its predecessor as a statute of *limitations*. *See Klinker v. Beach*, 1996 S.D. 56, ¶ 11, 547 N.W.2d 572, 575; *Zacher v. Budd Co.*, 396 N.W.2d 122, 130 (S.D. 1986). However, it is apparent from the statute's language that the Legislature prescribed a period after which there would be a *repose* because the statute bars the bringing of an action based on the occurrence of an event—substantial completion of construction—and not on the date the cause of action accrued. *See Peterson v. Burns*, 2001 S.D. 126, ¶ 41, 635 N.W.2d 556, 570 ("A statute of repose bars all actions after a specified period of time has run from the occurrence of some event other than the occurrence of an injury that gives rise to a cause of action." (citation omitted)); *Pitt-Hart v. Sanford USD Medical Center*, 2016 S.D. 33, ¶ 18, 878 N.W.2d 406, 413 (A statute of limitations, on the other hand, "creates 'a time limit for suing in a civil case, based on the date when the claim accrued.'" (citation omitted)).

[¶25.] Although it is clear SDCL 15-2A-3 is a statute of repose, the question remains whether the circuit court erred in concluding that it is the only limitation period that applies to the Hovens' claims against Banner. This Court has not

previously been presented with the question whether SDCL 15-2A-3 and SDCL 15-2-13 work in tandem. However, certain past cases are instructive.

[¶26.] For example, in *Gades*, the plaintiffs' home was substantially complete in late 2000, and in 2010, the plaintiffs instituted suit against the company hired to install siding, soffits, and gutters on their home. 2015 S.D. 42, ¶ 3, 865 N.W.2d at 157. The plaintiffs alleged injuries due to water infiltration and, in 2013, amended their complaint to assert that the company concealed the fact that no flashing had been installed around the windows and doors. In response to the company's motion for summary judgment, the circuit court dismissed the plaintiffs' complaint as untimely under SDCL 15-2-13(1). That statute provides: "Except where, in special cases, a different limitation is prescribed by statute, the following civil actions other than for the recovery of real property can be commenced only within six years after the cause of action shall have accrued: (1) An action upon a contract, obligation, or liability, express or implied . . . ." *Id.*

[¶27.] On appeal, this Court noted that the parties did not seem to dispute that SDCL 15-2-13(1) was the applicable statute, but in a footnote, the Court acknowledged the Gadeses' passing assertion in their brief that "they commenced their action well within the time allowed for actions for construction deficiencies." *Gades*, 2015 S.D. 43, ¶ 8 n.6, 865 N.W.2d at 158 n.6. The Court then noted that it was unclear whether this was meant to be an assertion that the claim was timely or was instead "offered merely in anticipation of an argument from Meyer regarding the ten-year period of repose[,]" and stated that, regardless, "SDCL 15-2A-3 does not operate to extend the time for filing an action otherwise barred by the running

of the applicable period of limitation." *Id.* The Court thereafter concluded that the plaintiffs' lawsuit commenced in 2010 was untimely under the six-year period of limitation in SDCL 15-2-13(1) based on undisputed facts establishing that the cause of action accrued in the spring of 2002 when the plaintiffs became aware of repeated water infiltrations. *Id.* ¶ 14, 865 N.W.2d at 160.

[¶28.] Further instructive is this Court's observation in *McMacken* that SDCL 15-2-9, the predecessor to SDCL 15-2A-3, "does not create a new . . . statute of limitations as to a cause of action . . . accruing prior to the expiration of the" limitation period in SDCL 15-2-9. 320 N.W.2d at 139. Rather, "[t]he statute must be read in conjunction with other statutes of limitation." *Id.* Thus, in explaining how SDCL 15-2-9 and the three-year statute of limitations in SDCL 15-2-14 for personal injury claims work in tandem, the Court stated that a plaintiff must commence suit within three years of the date of accrual under SDCL 15-2-14, and regardless of the date of accrual, the cause of action must be commenced prior to the period of repose as required under SDCL 15-2-9. *Id.*

[¶29.] A review of SDCL chapter 15-2A as a whole also supports that more than one limitation period can apply to claims described in SDCL 15-2A-3. Importantly, in SDCL 15-2A-6, the Legislature specifically provided that "[n]othing in §§ 15-2A-3 to 15-2A-5, inclusive, may be construed *as extending the period prescribed by the laws of this state*[.]" (Emphasis added.) Applying SDCL 15-2A-6, our statement in *Gades*, and the line of reasoning from *McMacken*, the Hovens had to commence suit within six years after the alleged negligence claim accrued as required by SDCL 15-2-13(1). Also, regardless of when the Hovens' cause of action

accrued, SDCL 15-2A-3 required them to bring suit no more than ten years after the substantial completion of the construction. Because the limitation periods in SDCL 15-2-13 and SDCL 15-2A-3 are not mutually exclusive, the circuit court erred in determining that SDCL 15-2-13 does not apply.

[¶30.]     While the circuit court did not rule on the question whether the Hovens' lawsuit is untimely under SDCL 15-2-13, it is unnecessary to remand this question to the court. Because the matter was before the court as part of a summary judgment motion, even if the court had ruled on the issue, this Court would review the ruling de novo to determine whether there are material issues of fact in dispute concerning the timeliness of the Hovens' suit under SDCL 15-2-13.

### 2.     Whether material issues of fact are in dispute related to when the Hovens' professional negligence cause of action accrued under SDCL 15-2-13(1).

[¶31.]     Banner asserts that the Hovens' lawsuit is barred by the six-year statute of limitations in SDCL 15-2-13(1) because the Hovens had, at the very least, constructive notice of their negligence cause of action based on the information in the May 2010 Elevation Certificate showing the elevation of their finished floor at a level below the City's BFE. In response, the Hovens assert that "material issues of fact exist regarding when Hovens' cause of action accrued," relying primarily on their claim that fraudulent concealment tolled the statute of limitations. While there is some overlap between a determination of when a cause of action accrues and whether there was fraudulent concealment that would toll the statutory limitation period, we first examine the law governing when the statute of

limitations begins to run and its application to the undisputed material facts presented in this case.

[¶32.]     As this Court explained in *Strassburg*,

> A statute of limitations ordinarily begins to run when the plaintiff either has actual notice of a cause of action or is charged with notice. "Actual notice consists in express information of a fact." SDCL 17-1-2. "Constructive notice is notice imputed by the law to a person not having actual notice." SDCL 17-1-3. One having actual notice of circumstances sufficient to put a prudent person on inquiry about "a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself." SDCL 17-1-4. Either actual or constructive notice, therefore, will equally suffice to start the statute of limitations' clock running.

1998 S.D. 72, ¶ 10, 581 N.W.2d at 514.

[¶33.]     Here, a review of the information in and attached to the Elevation Certificate reveals that the Hovens had either actual or constructive notice of a cause of action in 2010. Michael testified that he was aware that the City's BFE was 1810 feet, and while he did not previously know about different datums, the 2010 Elevation Certificate contains information that provided actual notice of the fact that the Hovens' home was not in compliance with the City's BFE. At the very least, the Hovens had constructive notice of this fact because the Elevation Certificate contains information that would prompt a prudent person to make further inquiry regarding the reported elevations.

[¶34.]     The certificate identifies FEMA's FIRM information, including the requirement that the BFE be 1810.0 feet in the NGVD 1929 datum. In regard to the Hovens' lake house, the certificate identifies the vertical datum used for the benchmark as NAVD 88, and under a section entitled "Conversion/Comments," the

certificate provides: "NAVD 1988 minus NGVD 1929 = +0.915 ft (Datum conversion is attached)." Johnson also attached a survey map to the certificate that contains an outline of the Hovens' house and the following conversion at the top of the page:

Flooding Source: Blue Dog Lake
Zone AE = BFE 1810.0 (NGVD29) = 1810.9 (NAVD88)

From this information, one would be put on notice that the base floor elevation in NAVD 1988 datum must be at least 1810.9 to meet the City's BFE. The survey map then identifies in a diagram the elevation of the lake house's finished floor at "1810.0 (NAVD88)" and further notes at the bottom the map that the "Vertical datum" used is "NAVD 88." This information shows that the finished floor was lower than the City's required BFE.

[¶35.] Because the undisputed material facts establish that there was sufficient information in the May 2010 Elevation Certificate to put the Hovens on actual notice, or at the very least, constructive notice of the elevation issue, their cause of action accrued in 2010. As such, it is undisputed that the Hovens' 2019 lawsuit was not commenced within six years from the date their cause of action against Banner accrued.

### 3. *Whether the Hovens established material issues of fact in dispute on the question whether fraudulent concealment tolled the statute of limitations.*

[¶36.] The Hovens assert that Banner knew they relied on its surveying and engineering services to ensure their lake house would be constructed to comply with the City's BFE and further knew in 2009 and 2010 that the lake house was constructed "below the minimum legal requirement." According to the Hovens, at this time, Banner had a duty to tell them that they were constructing their lake

house at an inadequate elevation. In support of their claim that Banner owed them such a duty, the Hovens direct this Court to the rules of professional responsibility governing technical professions related to integrity, fidelity, skill and practice, and the safeguarding of life, health, safety, welfare, and property of the public. *See* ARSD 20:38:36:01.

[¶37.]     In response, Banner asserts that there is no evidence establishing a confidential or fiduciary relationship between the parties. In its view, the relationship was at arm's length based on an ordinary business transaction. Banner thus asserts that the absence of a fiduciary relationship means the Hovens must present evidence that Banner engaged in affirmative acts or conduct that prevented the Hovens from knowing about their claim, and in Banner's view, the record contains no evidence of such conduct. Banner alternatively asserts that even if a duty was owed, there was no concealment because "[t]he work performed by Banner for the Hovens in 2010 openly and patently disclosed what the Hovens had done—they had built their house below the base flood elevation."

[¶38.]     "We have previously held that fraudulent concealment may toll the statute of limitations." *Purdy v. Fleming*, 2002 S.D. 156, ¶ 18, 655 N.W.2d 424, 431. Before examining whether fraudulent concealment applies, this Court must first determine if a fiduciary relationship existed between the parties such that Banner owed a duty to inform the Hovens that their lake house did not meet the City's elevation requirements. *Id.* "Mere silence, in the absence of a duty to speak, is not ordinarily sufficient" and "[i]n the absence of some trust or confidential relationship between the parties there must be some affirmative act or conduct on the part of the

defendant designed to prevent, and which does prevent, the discovery of the cause of action." *Yankton Cnty. v. McAllister*, 2022 S.D. 37, ¶ 34, 977 N.W.2d 327, 339 (quoting *Conway v. Conway*, 487 N.W.2d 21, 23–24 (S.D. 1992)). "The existence of a fiduciary duty and the scope of that duty are questions of law for the court." *Purdy*, 2002 S.D. 156, ¶ 18, 655 N.W.2d at 431 (citation omitted).

[¶39.]    This Court has "defined a fiduciary relationship as one which 'imparts a position of peculiar confidence placed by one individual in another.'" *Cleveland v. BDL Enterps., Inc.*, 2003 S.D. 54, ¶ 20, 663 N.W.2d 212, 218 (citation omitted). "Normally, in a fiduciary relationship, one of the parties has a superior power over the other." *McAllister*, 2022 S.D. 37, ¶ 34, 977 N.W.2d at 339 (citation omitted). We have also said that "normally in a confidential relationship, the 'property, interest, or authority of the other is placed in the charge of the fiduciary.'" *Cleveland*, 2003 S.D. 54, ¶ 20, 663 N.W.2d at 218 (citation omitted). However, "[f]iduciary duties, which often produce the duty to disclose, 'are not inherent in [a] normal arm's-length business relationship, and arise only when one undertakes to act primarily for another's benefit.'" *Id.* ¶ 18 (citation omitted).

[¶40.]    Here, a review of the record in a light most favorable to the Hovens does not support that Banner acted as the Hovens' fiduciary during any of Banner's interactions with them. This would include when Banner provided the Hovens elevation information in 2006 or 2007, when it shot the elevation of their home in 2009 and provided them a letter in January 2010 stating the elevation of the first floor, and when it provided them the May 2010 Elevation Certificate. Rather, the nature of these interactions and transactions reflects a normal arm's-length

business relationship wherein customers rely on and place trust in professionals to act competently and provide accurate information. Such reliance and trust, however, does not mean every hired professional is the customer's fiduciary. Further, although the Hovens direct this Court to the administrative rules governing the acts of licensed technical professionals, these provisions relate to technical professionals' conduct generally.[4] While these rules may have some bearing on the underlying negligence claim, they do not provide a basis for a determination that Banner acted as the Hovens' fiduciary during the interactions and transactions at issue.

[¶41.]     In *Schwartz v. Morgan*, this Court rejected a similar argument related to a fraudulent concealment claim in which the plaintiffs, purchasers of residential property, contended that the defendant seller had a statutory duty to disclose information about a driveway encroaching on a neighbor's property. 2009 S.D. 110, ¶ 11, 776 N.W.2d 827, 830. The plaintiffs argued that although the statute of

---

4.     The opening paragraph to ARSD 20:38:36:01 provides: "To establish and maintain a high standard of integrity, skill, and practice in the professions and to safeguard the life, health, safety, welfare, and property *of the public*, the following rules of professional conduct are binding upon each person holding a license and on all business entities authorized to offer or perform professional services under this article. Noncompliance with any of the rules of professional conduct can result in disciplinary actions." (Emphasis added.) The rule then lists 34 rules of professional conduct applying to various licensed "technical professions" including architects, engineers, and land surveyors. In particular, the Hovens focus on a licensee's obligation to carry on their work with "fidelity to clients" under ARSD 20:38:36:01(4) and assert that even if this does not "equate to a fiduciary duty," it reflects "a duty to convey information in a clear and meaningful manner." In further support of this assertion, the Hovens highlight ARSD 20:38:36:01(25), which requires licensees to "be completely objective and truthful in all professional reports [or] statements . . . and . . . include all relevant and pertinent information in those reports [or] statements."

limitations had expired on their statutory disclosure claim, they could nevertheless maintain their claim of fraudulent concealment. *Id.* ¶ 9. In rejecting this argument, the Court held that the plaintiffs could not "affix the duties of disclosure from their expired claim to effectively revive their untimely action." *Id.* ¶ 11. The Court further held that the plaintiffs must identify a duty owed separate from the statutory disclosure requirements, reasoning that "[t]o conclude otherwise would contravene the legislative intent that violations of the disclosure requirements . . . must be brought within six years." *Id.*

[¶42.]     Nevertheless, the Hovens alternatively claim that Banner had a duty to disclose that they were constructing their home below the City's BFE because, under the circumstances, such fact was material to the transaction between the parties and Banner was aware that the Hovens would expect Banner to disclose such fact. More specifically, the Hovens claim that "Banner had a duty [ ] to inform Hovens that they were completing their home at an inadequate elevation" "[u]nder the objective circumstances presented here," including that they requested Rames "to verify the critical floor elevation midway through their construction."

[¶43.]     In *Ducheneaux v. Miller*, this Court applied the Restatement (Second) of Torts to impose a duty, even in an arm's-length transaction, to disclose facts basic to the transaction. 488 N.W.2d 902, 913 (S.D. 1992) (quoting Restatement (Second) Torts § 551(2)(e)). The duty arises when one "knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts." *Id.* (emphasis omitted) (quoting

-20-

Restatement (Second) Torts § 551(2)(e)). However, in *Schwartz*, when considering whether the "facts basic to the transaction" exception to the rule that a duty is not owed in an arm's-length transaction applied, the Court explained "that before imposing a duty there must be evidence that the information not disclosed was something not discoverable by reasonable care." 2009 S.D. 110, ¶ 13, 776 N.W.2d at 831.[5]

[¶44.]     Here, the undisputed evidence supports that Banner knew, at the very least, in 2010 that the Hovens' house was being constructed below the City's BFE. There is also no dispute that Banner's January 25, 2010 letter provided an elevation in the NAVD 1988 only and that Banner did not specifically state in the 2010 Elevation Certificate provided to the Hovens that the floor of the Hovens' home did not meet the City's BFE. Further, other evidence, while disputed, when viewed in a light most favorable to the Hovens supports a reasonable inference that Banner knew the Hovens would have expected Banner to tell them if their house was not constructed at the elevation required by the City.

[¶45.]     However, the fact that the lake house was constructed below the City's BFE was discoverable by the Hovens had they examined the 2010 Elevation Certificate. The certificate contains information related to the required datum; the datum used by Banner; a conversion equation and the specific conversion showing

---

5.     The Court in *Schwartz* further noted that "the Restatement suggests limiting the 'facts basic to the transaction' analysis to circumstances 'in which the advantage taken of the plaintiff's ignorance is so shocking to the ethical sense of the community, and is so extreme and unfair, as to amount to a form of swindling, in which the plaintiff is led by appearances into a bargain that is a trap, of whose essence and substance he is unaware.'" *Id.* ¶ 13, 776 N.W.2d at 831 (quoting Restatement (Second) Torts § 551(2)(e)(cmt l)).

the elevation in the NAVD 1988 datum that would correspond to the elevation in the NGVD 1929 datum required by the City; and the floor elevation measurements for the Hovens' house. It therefore contained the information on which the Hovens have based their current lawsuit.

[¶46.] On appeal, the Hovens acknowledge that they did not review the information in the 2010 Elevation Certificate. They nevertheless claim that by the time they received it, they believed Rames had already confirmed that their house met the necessary elevation requirement when, in response to their request in 2009, he verified the elevation of their home and then provided them a letter in January 2010 advising that the elevation of the first floor was 1810.19. But "[f]raudulent concealment will not toll the statute of limitations, no matter the nature of the concealment, if a plaintiff is already on notice of a cause of action." *Strassburg*, 1998 S.D. 72, ¶ 15, 581 N.W.2d at 516. Also, a "defendant may reasonably expect the plaintiff to make his own investigation, draw his own conclusions and protect himself." *See Schwartz*, 2009 S.D. 110, ¶ 13, 776 N.W.2d at 831. Therefore, even if the January 2010 letter could support a claim of fraudulent concealment because of Banner's failure to include facts basic to the transaction (i.e., the elevation in the NGVD 1929 datum used by the City), the Hovens cannot simply ignore the fact that datum information and a conversion was provided shortly thereafter in the Elevation Certificate. Contrary to their suggestion otherwise, their failure to review the information provided therein cannot sustain their claim of fraudulent concealment.

[¶47.]     Because there is no special relationship between the parties and because the undisputed evidence establishes that the Hovens were provided information from Banner in May 2010 showing that their house was constructed below the City's BFE, or at the very least, putting them on inquiry notice of this fact, the circuit court properly granted Banner summary judgment on the question of fraudulent concealment. In light of this ruling and our determination that the undisputed material facts establish that the Hovens' cause of action accrued more than six years before they filed suit, the circuit court is directed on remand to dismiss the Hovens' negligence suit against Banner as untimely.[6]

[¶48.]     Affirmed in part, reversed in part, and remanded.

[¶49.]     JENSEN, Chief Justice, and KERN, SALTER, and MYREN, Justices, concur.

---

6.     Because of our determination that the Hovens' cause of action accrued at the latest in May 2010, the latest date on which they could have filed their negligence suit was in May 2016. Given this determination, and the fact that under either parties' claim as to when the Hovens' home was substantially completed (2007 versus 2013), the period of repose would not have expired prior to May 2016. Thus, it is unnecessary to address whether there are material issues of fact in dispute concerning the expiration of the repose period under SDCL 15-2A-3 because it is not implicated under the circumstances of this case.